IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ENOCH JAEGER, | ) | CASE NO.  1:19-CV-02853-SL |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN LYNEAL WAINWRIGHT, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION (Doc. Nos. 10-11) and ORDER (Doc. Nos. 4, 5, 10, 17-20, 22-24, 28)** |
| | ) | |
| | ) | |

This matter has been referred to the undersigned United States Magistrate Judge for preparation of a Report and Recommendation pursuant to Local Rule 72.2(b)(2).  Before the Court is the Petition of Enoch Jaeger ("Jaeger" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Jaeger is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the cases *State v. Jaeger*, Medina County Court of Common Pleas Case No.16-CR-0624.

Before the Court is Respondent Lyneal Wainwright's Motion to Dismiss Mixed Petition.  (Doc No. 11.)  Also before the Court are Jaeger's: Motion to Expand the Record (Doc. No. 4); Motion for Appointment of Counsel, Relief from Judgment or Order, and Evidentiary Hearing (Doc. No. 5); Motion for Summary Judgment, Declaratory Judgment, Appointment of Counsel, Appointment of Experts, and Request for Evidentiary Hearing (Doc. No. 10); Motion to Strike Respondent's Motion to Dismiss Mixed Petition (Doc. No. 17); Motion for Investigator and Experts (Doc. No. 18); Motion for Order Expanding the Record (Doc. No. 19); Motion to Proceed in Forma Pauperis (Doc. No. 20); Motion for Appointment of Counsel (Doc. No. 22); Motion for Evidentiary Hearing (Doc. No. 23); Motion for Leave to Conduct

1

Discovery (Doc. No. 24); and Motion for Appointment of Counsel (Doc. No. 28). For the reasons that follow, it is recommended that Respondent's Motion to Dismiss be DENIED (Doc. No. 11) but that the case be STAYED pending resolution of Jaeger's unexhausted claims in the state courts on the condition that Jaeger: (1) file quarterly status reports in this Court regarding the progress of state court proceedings that are limited strictly to apprising the Court of the current status of those proceedings; (2) refrain from filing any other materials with this Court while this case is stayed; and (3) seek reinstatement on this Court's active docket within thirty (30) days of fully exhausting his state court remedies.[1] It is also recommended Jaeger's motion for summary judgment and declaratory judgment (Doc. No. 10) be DENIED. Jaeger's motion to strike the motion to dismiss (Doc. No. 17) is DENIED, as are his motions for appointment of counsel (Doc. Nos. 5, 10, 22, 28). Jaeger's remaining motions (Doc. Nos. 4, 5, 10, 18-19, 23-24) are DENIED AS MOOT.

## I.    Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The Ohio Court of Appeals summarized the facts underlying Jaeger's conviction as follows:

> {¶ 2} In September and October 2016, there were a series of breaking and entering offenses committed at gas station convenience stores in Medina County. During each offense, two men would use a large rock or block of concrete to smash open the glass door of the store then enter it carrying large garbage cans. Once inside, they quickly collected cartons of cigarettes inside the garbage cans then exited less than a minute later.

---

[1] The Court notes that, to the extent Jaeger seeks to pursue new habeas claims as a result of his exhaustion of state court remedies, he will need to seek leave to amend his Petition to assert any such claims once the matter is reinstated on this Court's active docket.

{¶ 3} On October 12, 2016, Mr. Jaeger and an accomplice attempted to commit a similar offense. The gas station they targeted, however, had been the site of one of the earlier offenses and had modified its front door in response. The men, therefore, were unable to break through the door. As they were driving away from the gas station in the accomplice's car, they were stopped by a sheriff's deputy for having only one operating headlight. The deputy determined that there were arrest warrants out for both Mr. Jaeger and the accomplice, so he took them into custody. During a search of the car, law enforcement found clothing that matched the clothing worn by the perpetrators of each of the gas station break-ins. They also found two garbage cans and a large rock in the trunk of the car. Mr. Jaeger later told a detective that he had knowledge of the workings of the entire operation and that, in exchange for immunity, he could tell the detective the identities of all of the individuals involved in the offenses, as well as those involved in transporting and selling the stolen cigarettes.

{¶ 4} The Grand Jury indicted Mr. Jaeger for one count of vandalism, four counts of breaking and entering, three counts of theft, and one count of engaging in a pattern of corrupt activity. Following a number of continuances of the trial date, a jury found him guilty of the offenses. The trial court sentenced Mr. Jaeger to five years imprisonment. Mr. Jaeger has appealed, assigning three errors. We have reordered the second and third assignments of error for ease of disposition.

*State v. Jaeger*, 2018-Ohio-2994, 2018 WL 3624801, at *1 (Ohio Ct. App. 2018).

## II. Procedural History

### A.  Trial Court Proceedings[2]

On October 26, 2016, a Medina County grand jury indicted Jager on one count of vandalism, four counts of breaking and entering, three counts of theft, and one count of engaging in a pattern of corrupt activity.  *See* Public Docket Sheet for *State v. Jaeger*, Medina County Court of Common Pleas No. 16-CR-0624; *State v. Jaeger*, 2018 WL 3624801, at *1.  A jury trial commenced on July 24, 2017.  *See* Public Docket Sheet for *State v. Jaeger*, Medina County Court of Common Pleas No. 16-CR-0624.  On July 26, 2017, the jury found Jaeger guilty on all counts.  *Id.*  On September 28, 2017, the trial court sentenced

---

[2] Respondent did not file a state court record with his motion to dismiss, attaching only the docket sheet for Jaeger's state court case.  (Doc. No. 11-1.)

3

Jaeger to 12 months on Count One, 12 months on Count Two, five years on Count Three, and 12 months each on Counts Four through Nine, all to be served concurrently. *Id.*

## B.     Direct Appeal

Jaeger, through counsel, filed a timely notice of appeal to the state appellate court. *Id.* In his appellate brief, he raised the following assignments of error:

> I.      The trial court err[ed] by denying [Mr. Jaeger]'s motion to dismiss for speedy trial violations.
>
> II.     The trial court err[ed] when the jury found [Mr. Jaeger] guilty without the greater weight of the evidence.
>
> III.    The jury verdict is against the manifest weight of the evidence.

*State v. Jaeger*, 2018 WL 3624801, at **1-4. On July 30, 2018, the state appellate court affirmed Jaeger's convictions. *Id.* at **1-5.

On September 17, 2018, Jaeger, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio. *See* Public Docket Sheet for *State v. Jaeger*, Supreme Court of Ohio Case 2018-1305. In his Memorandum in Support of Jurisdiction, Jaeger raised the following Propositions of Law:

> I.      The Court did err when they failed to dismiss appellants [sic] case because of a violation of Right to Speedy Trial.
>
> II.     The Court did err when the appellant was found to be guilty and where the decision was against the sufficiency of evidence.
>
> III.    The Court did err when the appellant was found to be guilty and where the decision was against the manifest weight of the evidence.

*Id.* On October 2, 2018, the State filed a memorandum in response to jurisdiction. *Id.*

On November 21, 2018, the Supreme Court of Ohio declined to accept jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4). *Id.*

**C.      Application to Reopen Appeal under Ohio App. R. 26(B)**

On November 5, 2018, Jaeger filed an Application to Reopen Appeal Pursuant to Ohio App. R. 26(B).  *See* Public Docket for *State v. Jaeger*, Supreme Court of Ohio Case 2019-0407.  Jaeger's Application asserted the following grounds: "ineffective assistance of counsel; threats by counsel, (trial counsel), speedy trial, greater weight, manifest weight, unlawful stop, search and seizure, right to be secure, due process, equal protection, procedural due process[,] self-representation, impartial jury, excessive bail, cruel and unusual punishment, self-incrimination, prosecutorial misconduct, abuse of discretion, kidnapping, unlawful conviction, unlawful imprisonment[,] conspiracy, forgery, fraud, engaging in a pattern of corrupt activity (RICO), ineffective assistance of appellate counsel."  (Doc. No. 1 at 3.)

On February 6, 2019, the state appellate court denied the application as untimely.  *See* Public Docket for *State v. Jaeger*, Supreme Court of Ohio Case 2019-0407.

On February 19, 2019, Jaeger filed a motion for reconsideration of his Application to Reopen Appeal.  (Doc. No. 1 at 14.)

On March 19, 2019, Jaeger filed a notice of appeal and a memorandum in support of jurisdiction with the Supreme Court of Ohio.  *See* Public Docket Sheet for *State v. Jaeger*, Supreme Court of Ohio Case 2019-0407.

On May 3, 2019, the state appellate court denied the motion for reconsideration.  (Doc. No. 1 at 14.)

On May 29, 2019, the Supreme Court of Ohio declined to accept jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4).  *Id.*

5

**D.      Post-Conviction Motions[3]**

On January 2, 2019, Jaeger filed a Petition to Vacate or Set Aside Judgment,[4] as well as motions for post-conviction discovery, correction or modification of record, independent investigator, and expert assistance in forgery, audio/video recording tampering, and stenography/transcript manipulation, alteration, or tampering.  *See* Public Docket Sheet for *State v. Jaeger*, Medina County Court of Common Pleas No. 16-CR-0624.  On January 7, 2019, Jaeger filed supplemental facts to petition for post-conviction relief.  *Id.*

On January 10, 2019, the State filed an opposition to Jaeger's motions for appointment of counsel, appointment of an independent investigator and experts, and post-conviction discovery.  *Id.*  On January 14, 2019, Jaeger filed "Supplemental Facts for Claims and Petition for Post-Conviction Relief."  *Id.*  On January 28, 2019, Jaeger filed a supplemental affidavit of facts as well as a motion for new trial, in addition to other motions.  *Id.*

On February 11, 2019, Jaeger filed "Supplemental Facts for Claims and Petition for Post-Conviction Relief."  *Id.*  On February 12, 2019, the State filed its opposition to Jaeger's motion for new trial due to newly discovered evidence, as well as its opposition to Jaeger's Petition to Vacate or Set Aside Judgment of Conviction and Motion to Dismiss without Hearing.[5]  *Id.*  On March 13, 2019, Jaeger filed a reply,[6]  which the State moved to strike.  *Id.*  On April 1, 2019, Jaeger moved to strike the State's opposition to his post-conviction petition, as well as its motion to strike his reply brief.  *Id.*

---

[3] The following summary includes relevant post-conviction filings; it is not an exhaustive list of the plethora of post-conviction motions Jaeger has filed with the state trial and appellate courts.

[4] This document is not available on the state court docket.  *See* Public Docket Sheet for *State v. Jaeger*, Medina County Court of Common Pleas No. 16-CR-0624.

[5] These documents are not available on the state court docket.  *Id.*

[6] This document is not available on the state court docket.  *Id.*

On September 6, 2019, Jaeger filed a motion for leave to file application and motion for new trial, an application for order allowing motion for new trial, and a motion for new trial due to newly discovered evidence.  *Id.*  On October 28, 2019, Jaeger filed a motion for order of summary judgment, motion for order to reverse conviction and sentence, and a motion for order to dismiss case with prejudice.  *Id.*  On November 20, 2019, Jaeger filed a motion for modification of sentence.  *Id.*  On December 16, 2019, Jaeger filed supplemental claims to his post-conviction petition, as well as motion to file supplemental claims to post-conviction petition, and a motion for relief from judgment or order.  *Id.*

On January 2, 2020, Jaeger filed motions for summary judgment.  *Id.*  On January 10, 2020, Jaeger filed an addendum to his motion for modification of sentence.  *Id.*

All of these motions remain pending through the date of this Report and Recommendation.  *Id.* (*See also* Doc. No. 1 at 7-36; Doc. No. 11 at 2.)

On March 2, 2020, Jaeger filed a complaint for writ of procedendo.  *See* Public Docket Sheet for *State v. Jaeger*, Medina County Court of Common Pleas No. 16-CR-0624.  This complaint is captioned with the state appellate court information but bears the file stamp of the Medina County Clerk of Courts. *Id.*

**E.  Federal Habeas Petition**

On November 25, 2019,[7] Jaeger, *pro se*, filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

> **Ground One**: Due process violated and offended, procedural due process violated and offended.

---

[7] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until December 6, 2019, Jaeger states that he placed it in the prison mailing system on November 25, 2019.  (Doc. No. 1 at 39.)  Thus, the Court will consider the Petition as filed on November 25, 2019.

**Supporting Facts**: See attachment.

1. Prosecutor withheld vital evidence that would exonerate petitioner
2. Prosecutor lied under oath on June 25, 2017 and during trial
3. Prosecutor presented prejudiced materials not objected to by counsel, not previously given to counsel before presented at trial
4. The judge denied any evidentiary hearing, though requested many times
5. The judge failed to hear pre-trial motion on 7.24.17 prior to commencement of trial
6. Judge denied recusal and/or discharge of prejudicial counsel, though aware of prejudice

**Ground Two**: Speedy Trial violation.

**Supporting Facts**: See attachment.  Petitioner arrested on Oct. 12, 2016.  Trial set for Jan. 10, 2017.  Continuance filed with no consent on Jan. 09, 2017.  Continuance filed on Feb. 25, 2017 never journalized.  Motion to continue on Mar. 27, 2017 never journalized.  Motion to continue on May 01, 2017 no consent, not journalized until May 02, 2017.  Motion to continue on June 05, 2017 requested by State, not journalized until June 06, 2017.  Transcripts of proceedings reflect def. counsel as requesting to continue; however, audio transcripts will show that transcripts were altered by forgery + fraud

**Ground Three**: Manifest weight of evidence

**Supporting Facts**: See attachment[.]  Counsel wrongly implied admission of guilt in one count.  Evidence presented by State was inadmissible, contaminated, not supportive of guilt.  Video evidence by police confirms others beside Petitioner and exonerate him (withheld by State – Brady).  The MO of person in three instances significantly differ; however not raised by ineffective counsel.

**Ground Four**: Sufficiency of evidence

**Supporting Facts**: Evidence is contaminated and doesn't support guilty verdict.  Evidence is inadmissible.  Video evidence by police confirms others than Petitioner and exonerates him (withheld by prosecutor – Brady)[.]  The MO of person involved significantly differs in video evidence and does not support a guilty verdict.  Facts not raised by ineffective counsel

**Ground Five**: Felonious Assault and Battery – See attachment

8

>   **Supporting Facts**: [T]he police, state, court, and counsel did forcefully detain and constrain petitioner unlawfully through means of physical force, threats, coercion, and intimidation, and force him to participate in unlawful proceedings. Threats of counsel witnessed by Sheriff deputies at the jail (Medina County) and in the jury room prior to the commencement of trial, whereby, the deputy asked counsel to "step outside and take a break."

**Ground Six**: Kidnapping and Abduction – See attachment

>   **Supporting Facts**: Parties did by force, threat, and deception kidnapp [sic] and/or abduct Petitioner unlawfully, and held him against his will, and by use of excessive bail did subject him to other violations of criminal and civil forfeitures.

**Ground Seven**: Unlawful Conviction and False Imprisonment – See attachment

>   **Supporting Facts**: Conviction predicated on fraud, forgery, conspiracy, and other illicit acts of the parties against Petitioner.  Unlawful stop by means of an EMP device.  No authority to detain, search, or arrest.  The Court participated in tampering.  Judges signatures are forged.  Transcripts tampered.  Jury biased by prosecutor lying that he could not procure jury for trial, while witnesses and jury members sat in courtroom.  Financial records to confirm their presence. Petitioner exposed to jury wearing jail garb and handcuffed.

**Ground Eight**: Conspiracy – See attachment

>   **Supporting Facts**: Parties did conspire together to commit unlawful acts, and acted in concert to deprive Petitioner of substantial civil rights, while committing other illicit acts.  Parties conspired to obstruct petitioner from acting on his own behalf and denied him all requests for evidentiary hearing and did not allow him to participate in his defense.  Parties conspired to forge judge's signatures and alter transcripts, and enter false testimony into record.  The Court did not file many of Petitioner's motions for defense.

**Ground Nine**: Fraud – See attachment

>   **Supporting Facts**: Parties by fraud, Racketeering, forgery, tampering, and other illicit acts, did participate to defraud a United States Citizen of civil rights. Parties did by fraud unlawfully detain, search, and seize petitioner, and deprive him of fairness and honest services of Governmental functions and persons. Parties entered fraudulent information into record to unlawfully convict and false imprison petitioner.

9

**Ground Ten**: Wire Fraud – See attachment

> **Supporting Facts**: Parties did commit wire fraud through illicit acts by use of computes [sic], writings, radio, false testimony, and other transmissions by wire for purposes to defraud a United States Citizen.  Parties forged documents and transcripts, and signatures using government resources to participate in criminal activity including conspiracy, fraud, forgery, and engaged in a pattern of corrupt activity to interfere with civil rights of another.  All orders and judgments, including on Dept. of Corrections computers are fraudulent and unlawful.

**Ground Eleven**: Forgery – See Attachment

> **Supporting Facts**: Judge's signatures are forged.  Journal entries and Transcripts are forged.  Parties Knowingly and willing participated in fraud by means of forgery and other illicit acts.  Parties possessed with the purpose to alter photographs, video evidence, documents, testimony, and other [sic] to facilitate a fraud and interfere with the civil rights of a United States citizen.  Parties pre-time stamped document.

**Ground Twelve**: Tampering – See Attachment

> **Supporting Facts**: Police and prosecutor tampered with evidence, records, and other [sic], in order to obstruct by means of fraud unlawfully convict Petitioner. The Court tampered with records, documents, transcripts, audio/video, computers, and other [sic], in conspiracy and acts of fraud, forgery, and engaged in a pattern of corrupt activity, to unlawfully convict and sentence petitioner.  The prosecutor and counsel tampered with the jury to bias petitioner.

**Ground Thirteen**: Engaging in a Pattern of Corrupt Activity – See Attachment

> **Supporting Facts**: Police acted through unlawful enterprise to offend unlawful stop, search, seizure of person and property, and did conspire to commit other illicit acts, including fraud, wire fraud, and others.  The State, prosecutors, the Court, and counsel(s) did participate through unlawful enterprise by forging documents, withholding evidence tampering, obstructing, and others.  Testimony given under oath is false.  Court reporters spent considerable time with jury during deliberations.  Intentional verbal and non verbal cues to bias Petitioner were had during trial.

**Ground Fourteen**: Unlawful Stop, Search, and Seizure – See Attachment

**Supporting Facts**: Police used unlawful means to initiate unlawful stop – an EMP device.  Police did without cause or articulable suspicion of a crime, did unlawfully detain, search, and seize petitioner and property.  Police used faulty methods for evidence collection, storage, and production of evidence.  Police lied in reports, and again on the stand – which contradict statements in report.  Police knowingly disregard evidence, exculpatory in nature, that would exonerate Petitioner.  The State, by and through prosecutors, and the Court, by and through judge and counsels participate in the obstruction of evidence and supported unlawful and illicit acts.

**Ground Fifteen**: Subject Matter Jurisdiction – See Attachment

**Supporting Facts**: Offenses occurred outside jurisdiction of Court and not lawfully bound over.  Appearance before the Court predicated on unlawful and illicit acts.  Parties breached its contract with Petitioner, therefore, outside of jurisdiction of Court.  Parties unlawf [sic] forced Petitioner to participate in proceedings.  Improper indictment induced by State presenting Petitioner as African American, though he isn't, and it is unlawful to do so.

**Ground Sixteen**: Equal Protection of law – See Attachment

**Supporting Facts**: Police denied equal protection through illicit acts against Petitioner, and through unlawful testimony, obstruction, tampering, and others, to deny equal protection and other civil rights.  The Court, State, and Counsel denied equal protection through fraud, forgery, obstruction, tampering, and others, to deny Petitioner civil rights. The Court and judge denied Petitioner any evidentiary and suppression hearing.

**Ground Seventeen**: Right to be secure – See Attachment

**Supporting Facts**: Police acted illicitly to violate Petitioner [sic] right to be secure and did unlawfully search and seize his person and property, without probable cause, did deprive Petitioner of life, liberty, and property.  The State and Court enforced laws which abridged the privileges and immunities of Petitioner, a citizen of the United States, and did deprive him of life, liberty, and property; and denied him right to any defense, and to produce exculpatory evidence or otherwise participate in defense.

**Ground Eighteen**: Excessive Bail – See Attachment

**Supporting Facts**: The Court imposed excessive bail by the way of cash bond in the amount of One Hundred and Fifty Thousand dollars (150,000) on each of the

11

eight (8 [sic] counts and no bond on the ninth, to prejudice the Petitioner and obstruct his defense by prejudiced appointed counsel.  Petitioner was held in jail unlawfully through excessive bail, whereby he could not obtain and produce any discovery, evidence, and secure witnesses and counsel for defense.

**Ground Nineteen**: Cruel and Unusual Punishment – See Attachment

> **Supporting Facts**: Police subjected petitioner to gunpoint, arrest, unlawful detention, and exploit[ed] him by illicit acts perpetrated on him.  The Court imposed unusual punishment on Petitioner, though aware of violations against him and despite the fact of knowing innocence, did participate in illicit acts to inflict unusual punishment, and deprive him of life, liberty, and property, among others.

**Ground Twenty**: Self-Incrimination – See Attachment

> **Supporting Facts**: The State and Police unlawfully compelled Petitioner to be a witness against himself by offering, through deception and coercion, a plea agreement for testimony in exchange for immunity from prosecution and dismissal of the case, and once the conversation was had, used the information against him.  Counsel and the Court participated in this breach of contract and participated in fraud, obstruction, tampering and others to violate Petitioner's civil rights.

**Ground Twenty-One**: Police, Prosecutorial, Counsel Misconduct – See Attachmen[t]

> **Supporting Facts**: Police tainted evidence and lied under oath, withheld information and evidence, unlawfully used EMP device to induce stop.  Prosecutor lied on record and withheld evidence.  Broke plea agreement and used information against Petitioner.  Counsel threated Petitioner, failed to investigate, and participated in fraud, forgery, tampering, and obstruction, among others to prejudice proceedings.

**Ground Twenty-Two**: Abuse of discretion – See Attachment

> **Supporting Facts**: The Court abused its discretion by judge not allowing any evidentiary hearing and by denying motions presented by Petitioner, and refusing to hear motions on July 24, 2017 prior to the commencement of trial.  Counsel objected to judge not allowing any hearing – check sentencing transcripts.  Court abused its discretion by denying Petitioners [sic] request for Pro Se appearance, and by denying him to discharge prejudicial counsel prior to trial.  Abuse of discretion through excessive bail.  Abuse through excessive sentencing disparity.

12

Abuse through allow [sic] contaminated evidence into trial and impartial jury to decide verdict.   Abuse through forgery of documents and signatures and transcripts.

**Ground Twenty-Three**: Impartial Jury – See Attachment

**Supporting Facts**: Petitioner presented as Black to all white jury.  Presented by State as Black to grand jury for indictment.  Jury members exposed to petitioner wearing jail garb and shackled.  Petitioner wearing jail slippers during trial.  Jury members made prejudicial comments during selection.  Jury member friend of counsel.

**Ground Twenty-Four**: Ineffective Assistance of Counsel – See Attachment

**Supporting Facts**: Counsel failed to investigate any matters or present any mitigating evidence or call any witnesses or file relevant motions, including motion to supress [sic], didn't object to prejudicial evidence presented at trial and not given in discover[y], failed to assess the merits for defense, did not discuss the merits on fact and of alternative strategies for defense.  Appellate counsel failed in the same.

**Ground Twenty-Five**: Freedom of Speech – See Attachment

**Supporting Facts**: The Court fixed a shocking device on leg of Petitioner and directed him not to speak during trial.  Counsel failed to raise relevant issues and file motions and present evidence, though directed by Petitioner to do so.  The Court did not allow Petitioner to speak at hearings or present mitigating and exculpatory evidence, and refused to file many motions by Petitioner.

**Ground Twenty-Six**: Denied Access to the Court – See Attachment

**Supporting Facts**: Police denied access to the Court by unlawful acts to tamper and obstruct evidence.  Counsel denied access to the Court by forgery, fraud, obstruction, and tampering, and failing to act on behalf of Petitioner.  The State denied access by the same means.  The Court denied access to the court by refusing to allow any evidentiary hearings and denying Petitioner's motions, and allowing tainted and unlawful evidence into record.  The Court denied access by unreasonable bail and refusing discharge of prejudicial and biased counsel, so that Petitioner could not secure a defense or otherwise act on his own behalf.  The judge was/is aware of the many violations and offences against the Petitioner.

**Ground Twenty-Seven**: Obstruction – See Attachment

13

**Supporting Facts**: Police participated in obstruction by giving false testimony and evidence.  Tampering with evidence.  The State obstructed by coercing and breaking a plea agreement which they later used that information to prosecute Petitioner once obtained.  Prosecutors lied on record.  Counsel obstructed by threats and intimidation, and by refusing to file motions and act on Petitioner's defense, and forging documents.  The Court obstructed by refusing evidentiary hearings, forging judge's signatures, tampering with records, including transcripts, and concealing documents.

**Ground Twenty-Eight**: Interfering with Civil Rights – See Attachment

**Supporting Facts**: Parties knowingly and willfully participated in interfering with civil rights.  Police used unlawful device (EMP) to initiate unlawful stop, detention, search and seizure of Petitioner, and lied on record.  The State lied on record and used coercion and threat to obtain plea agreement, later used as confession, to false [sic] imprison Petitioner[.]  Counsel by threat and intimidation assaulted Petitioner and forged documents, and derelict [sic] of duty, to convict unlawfully.  The Court tampered with evidence and forged documents, used excessive bail to false [sic] imprison Petitioner.

**Ground Twenty-Nine**: Civil action for deprivation of rights – See Attachment

**Supporting Facts**: The Court ignored issues surrounding its knowledge of illicit acts against the Petitioner, and did participate and share in them by acts of forgery, tampering, obstruction, fraud, and engaging in a pattern of corrupt activity, among others.  The Police, The State and its prosecutors and prisons, and counsel also participated in illicit and unlawful acts to deprive Petitioner of civil and other rights.

**Ground Thirty**: Conspiracy to interfere with Civil Rights – See Attachment

**Supporting Facts**: Parties conspired together in corrupt and illicit acts to interfere with the Civil Rights of the Petitioner by means of false arrest and imprisonment by police; false imprisonment by the Court through excessive bail, forged documents, tampered transcripts, among others.  The State conspired with the police, counsel, and the Court to false [sic] imprison Petitioner by unlawful means and breach of contract though deception.  Counsel similarly participated in the same.

**Ground Thirty-One**: Action for neglect to prevent conspiracy

14

**Supporting Facts**: The Police, State, Court and Counsel knowingly and willingly participated and shared in illicit acts against Petitioner by commission or omission and failed to act through neglect and/or implicitly or explicitly to prevent conspiracy that resulted in substantial violations and offenses of Petitioner's civil rights.

**Ground Thirty-Two**: Extortion under color of official right

**Supporting Facts**: a.-e. See pg. 12; Petitioner incorporates, restates, and re-alleges each and every preceding paragraph, as well as those in affidavits, motions, petitions and other papers filed in the Court

**Ground Thirty-Three**: Fraud involving the deprivation of the intangible right to honest services of public officials.

**Supporting Facts**: a.-e. See pg. 12m Gr. 32

**Ground Thirty-Four**: Conspiracy to defraud by interference with Governmenta[l] Functions

**Supporting Facts**: a.-e. See pg. 12m Gr. 32

**Ground Thirty-Five**: Malicious Prosecution

**Supporting Facts**: a.-e. See pg. 12m Gr. 32

**Ground Thirty-Six**: Involuntary Servitude

**Supporting Facts**: By and through the Police, Court, State, and Counsel, and Prisons in illicit acts including conspiracy, fraud, forgery, tampering, obstruction, and engaging in a pattern of corrupt activity, among others, Petitioner was/is denied substantial civil rights and subjected to involuntary servitude at the prison.

**Ground Thirty-Seven**: Breach of Contract

**Supporting Facts**: a.-e. See pg. 12m Gr. 32

**Ground Thirty-Eight**: Libel

**Supporting Facts**: a.-e. See pg. 12m Gr. 32

**Ground Thirty-Nine**: Slander

15

> **Supporting Facts**: a.-e. See pg. 12m Gr. 32
>
> **Ground Forty**: Legal malpractice
>
> **Supporting Facts**: a.-e. See pg. 12m Gr. 32
>
> **Ground Forty-One**: Personal Injury
>
> **Supporting Facts**: a.-e. See pg. 12m Gr. 32
>
> **Ground Forty-Two**: Failure to investigate
>
> **Supporting Facts**: a.-e. See pg. 12m Gr. 32

(Doc. No. 1 at 15-35.)

On the same day the Court received Jaeger's Petition, the Court also received Jaeger's Motion to Expand the Record (Doc. No. 4) and Motion for Appointment of Counsel, Motion for Relief from a Judgment or Order, and Motion for Evidentiary Hearing (Doc. No. 5). Respondent did not file a response to these motions.

On February 27, 2020, Jaeger filed a Motion for Summary Judgment, Motion for Declaratory Judgment, Motion for Appointment of Counsel, and Motion for Appointment of Experts, and requested an evidentiary hearing. (Doc. No. 10.)

On March 6, 2020, Respondent filed a Motion to Dismiss Mixed Petition. (Doc. No. 11.) On March 26, 2020, Jaeger sought an extension of time until May 5, 2020 to respond to the motion to dismiss. (Doc. No. 12.) The Court granted Jaeger's motion for extension of time. (Non-document Order dated March 30, 2020.)

On May 1, 2020, Jaeger filed a Motion to Strike Respondent's Motion to Dismiss Mixed Petition. (Doc. No. 17.) That same day, Jaeger filed a Motion for Investigator and Experts (Doc. No. 18), Motion for Order Expanding the Record (Doc. No. 19), Motion to Proceed in Forma Pauperis (Doc. No. 20),

16

Motion for Appointment of Counsel (Doc. No. 22), Motion for Evidentiary Hearing (Doc. No. 23), and Motion for Leave to Conduct Discovery (Doc. No. 24).

On May 15, 2020, Respondent filed an opposition to Jaeger's Motion for Investigator and Experts (Doc. No. 18), Motion for Order Expanding the Record (Doc. No. 19), Motion for Appointment of Counsel (Doc. No. 22), Motion for Evidentiary Hearing (Doc. No. 23), and Motion for Leave to Conduct Discovery (Doc. No. 24).

On May 20, 2020, Jaeger filed yet another motion for appointment of counsel.  (Doc. No. 28.)

### III. Analysis

Respondent argues Jaeger's Petition "contains nearly 40 unexhausted claims" and should be dismissed without prejudice, not stayed.  (Doc. No. 11 at 2, 4-6.)  Respondent asserts:

> Respondent's preliminary review of Jaeger's procedural history reveals that his AEDPA one-year limitations period has yet to even begin. As such, there is no reason to stay his habeas petition on this Court's docket under *Rhines, supra*. In Case No. 2018-1305, the Ohio Supreme Court declined jurisdiction in discretionary review on November 21, 2018, following Jaeger's unsuccessful direct appeal in *State v. Jaeger*, 2018-Ohio-2994. *State v. Jaeger*, 2018-Ohio-4670. Thus, Jaeger's conviction became final 90 days later, on February 20, 2019, when the time to file for certiorari expired. *Lawrence v. Florida*, 549 U.S. 327, 333 (2007) (citing *Clay v. United States*, 537 U.S. 522, 527-28, n.3 (2003)).

> However, before his conviction became final, Jaeger filed on January 2, 2019, a timely post-conviction petition in the trial court. (See attached docket sheet, Medina County Case No. 16-CR-062).  The running of the AEDPA limitations period may be tolled during the pendency of a "properly filed" application for state post-conviction relief or other collateral relief with respect to the pertinent judgment or claims under 28 U.S.C. § 2244(d)(2), *Artuz v. Bennett*, 531 U.S. 4, 8-9 (2000); *Allen v, Siebert*, 552 U.S. 3, 7 (2007).  According to the trial court's docket, Jaeger's post-conviction petition remains pending, thereby tolling his AEDPA limitations period before it had even started to run.  As such, Jaeger has filed is habeas petition prematurely prior to exhausting his state remedies.

17

Respondent submits dismissing Jaeger's habeas petition will not affect his AEDPA limitations period, because it has been tolled since the January 2, 2019, filing of his postconviction petition, and no AEDPA time has run. Thus, in this case, Respondent submits none of the post-AEDPA statute of limitations concerns exist if the petition were dismissed pending exhaustion of Jaeger's pending post-conviction remedies in the Ohio courts.

As to the second *Rhines* criterion, Respondent would argue that all of Jaeger's habeas claims are meritless. However, the nature of habeas is that claims, even meritless ones, should be first reviewed by the state courts. 28 U.S.C. §2254 (b)(1) & (c); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). . . .

(*Id.* at 4-5) (footnote omitted).  As a result, Respondent maintains Jaeger may sever the unexhausted grounds and proceed with the exhausted and cognizable grounds (Grounds Two and Four)[8] or his Petition must be dismissed.  (*Id.* at 5-6.)

In his motion to strike, Jaeger argues, "Though the Respondent may be correct in saying that Petitioner may yet have time to file his habeas and that his time has not expired, this does not preclude the Petitioner from filing his federal habeas nor does this preclude the court from reviewing his case."  (Doc. No. 17 at 14.)  Jaeger admits his post-conviction petition remains pending, "along with no less than 40 other motions . . ."  (*Id.* at 17.)  In his Petition, Jaeger admits he raised 39 claims in his pending post-conviction petition.  (Doc. No. 1 at 15-35.)  But Jaeger asserts any claim that he has failed to exhaust his state remedies is false because he has presented all of his claims to the trial court, state appellate court, and Supreme Court of Ohio.  (Doc. No. 17 at 25-27.)  He also argues, "There remains no corrective process at the state level or they are ineffective to protect the Petitioners [sic] rights and privileges under the

---

[8] As Respondent argues (Doc. No. 11 at 2), Jaeger's manifest weight of the evidence claim is not cognizable on federal habeas review.  *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Howard v. Tibbals*, No. 1:12 CV 1661, 2014 WL 201481, at *16 (N.D. Ohio Jan. 17, 2014); *Hess v. Eberlin*, No. 2:04-cv-1144, 2006 WL 2090093, at *6 (S.D. Ohio Jan. 17, 2006).  *See also Gibson v. Miller*, 5:15CV119, 2016 WL 6277229, at *1 (N.D. Ohio Oct. 27, 2016) ("[C]ontentions that a conviction is contrary to the manifest weight of the evidence also do not raise cognizable claims.").

18

Constitution." (*Id.* at 30.) Jaeger moves the Court to stay and abbey his Petition "as the last option." (*Id.* at 31.) Jaeger also maintains the Respondent's assertions concerning the AEDPA statute of limitations are an attempt to "bar [him] from raising claims in the future." (*Id.* at 33.)

Before a state prisoner may seek a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254, he must exhaust his state court remedies by fairly presenting all his constitutional claims to the highest state court and to all appropriate state courts prior to that. *See* 28 U.S.C. § § 2254(b), (c); *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir.1987); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir.1987).  To fulfill the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which, in Ohio, includes discretionary review by the state's highest court, the Ohio Supreme Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985).  In order to fairly present habeas claims to the state courts, such claims must be presented at the first available opportunity. *Rust v. Zent*, 17 F.3d 155, 160–61 (6th Cir. 1994).  A habeas petitioner bears the burden of demonstrating he has properly and fully exhausted his available state court remedies with respect to the claims he seeks to present for federal habeas review. *See Caver v. Straub,* 349 F.3d 340, 345 (6th Cir. 2003); *Rust,* 17 F.3d at 160; *Prather v. Rees*, 822 F.2d 1418, 1420 n. 3 (6th Cir. 1987).

If a federal habeas petitioner has not fairly presented his claims through the requisite levels of state appellate review to the state's highest court, but still has an avenue open to him in the state courts by which he may present his federal constitutional claims, his petition may be dismissed without prejudice, or administratively stayed, pending his exhaustion of the available state remedy. *See* 28 U.S.C. § 2254(c); *see also Duncan v. Walker*, 533 U.S. 167, 182-84, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (Stevens, J.,

19

concurring); *Griffin v. Rogers*, 308 F.3d 647, 652 & n.1 (6th Cir. 2002); *cf. Rhines v. Weber*, 544 U.S. 269, 276-77, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005).  A federal court may exercise its "limited discretion" in holding a petition in abeyance if a petitioner presents a "mixed petition;" that is, one containing both exhausted and unexhausted claims.  28 U.S.C. § 2254(b); *see also Rose v. Lundy*, 455 U.S. 509, 515–16, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).  To do so, Petitioner must show he meets the criteria set forth in *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005).  The procedure is only appropriate when: (1) there is good cause for failure to exhaust in state court; (2) the unexhausted claims are potentially meritorious;[9] and (3) there is no indication the petitioner engaged in intentionally dilatory litigation tactics.  *Id*. at 278.

In order to avoid having a federal habeas petition being dismissed as time-barred while exhausting state remedies, a petitioner may file a "'protective'" habeas petition in federal court and ask the federal court to "stay and abey" the petition until the state remedies are exhausted.  *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).  "A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court."  *Id.* (citing *Rhines*, 544 U.S. at 278).

Here, it is clear Jaeger has not fairly presented his federal habeas claims through the requisite levels of state appellate review to the Ohio Supreme Court.  Jaeger's petition for post-conviction relief, filed January 2, 2019, remains pending in the trial court, as do the rest of his post-conviction motions discussed in the procedural history, *supra*.  A review of Jaeger's Petition and the documents available through the public dockets of Jaeger's state trial court, appellate court, and Supreme Court of Ohio cases

---

[9] Earlier in its opinion, the Supreme Court stated, "Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless."  *Rhines v. Weber*, 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005).

establish he exhausted three claims but the remaining 39 are unexhausted.  Therefore, Jaeger's Petition is a "mixed" petition, containing both exhausted and unexhausted claims.

Only "properly filed" applications for post-conviction relief or collateral review toll the statute of limitations, and "a state post-conviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 128 S.Ct. 2, 169 L.Ed.2d 329 (2007); *Pace*, 544 U.S. at 417 ("time limits, no matter their form, are 'filing' conditions," and a state postconviction petition is therefore not "'properly filed'" if it was rejected by the state court as untimely); *Monroe v. Jackson*, No. 2:08-cv-01168, 2009 WL 73905, at *2 (S.D. Ohio Jan. 8, 2009).  "So, while a properly filed motion for relief from judgment tolls the limitations period, the Court cannot at this point determine whether the state court will determine that Petitioner's motion was properly filed."  *Stegall v. Rapelje*, 2012 WL 4009174, at *2 (E.D. Mich. Sept. 12, 2012).  If the state courts determine Jaeger's post-conviction petition was not properly filed, on timeliness grounds or otherwise, the AEDPA statute of limitations has already expired.[10]

The Sixth Circuit has interpreted *Rhines* as follows: "In *Rhines*, the Supreme Court noted that the 'stay and abeyance' method should only be available in instances where the petitioner can: 1) show good cause for failing to present the claims before the state court in the first instance; and 2) show that his unexhausted claims are not 'plainly meritless.'"  *Wagner v. Smith*, 581 F.3d 410, 419 (6th Cir. 2009) (quoting *Rhines*, 544 U.S. at 277.)  *See also Hickey v. Hoffner*, 701 F. App'x 422, 426 (6th Cir. 2017) ("But unlike the district court, we do not find these claims plainly meritless . . . On such a record, we conclude that Hickey has presented at least a colorable claim of ineffective assistance.") (citations

---

[10] The Supreme Court of Ohio declined jurisdiction over Jaeger's direct appeal on November 21, 2018.  *See* Public Docket Sheet for *State v. Jaeger*, Supreme Court of Ohio Case 2018-1305.  Jaeger's conviction became final 90 days later, on February 19, 2019, when the time to file for *certiorari* expired.  *Lawrence v. Florida*, 549 U.S. 327, 333 (2007).  The AEDPA statute of limitations began to run the next day and, without any tolling, expired in February 2020.

omitted).  "'In determining whether a claim is 'plainly meritless,' principles of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless 'it is perfectly clear that the petitioner has no hope of prevailing.'" *Crumley v. Jackson*, Civil No. 2:17-CV-11318, 2017 WL 4176481, at *4 (E.D. Mich. Sept. 21, 2017) (quoting *Dixon v. Baker*, 847 F.3d 714, 722 (9th Cir. 2017) (additional citations and internal quotation marks omitted).  "'A contrary rule would deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relied if they believe it is warranted.'"  *Id.* (quoting *Dixon*, 847 F.3d at 722) (additional citation omitted).

While some of Jaeger's claims are plainly meritless (e.g., involuntary servitude, legal malpractice), his Petition raises colorable claims of due process, equal protection, unlawful stop, search, and seizure, ineffective assistance of counsel, prosecutorial misconduct, including a *Brady* violation, and juror bias.[11] Many of the same facts underpin his many claims, and he has already filed a post-conviction petition with the trial court raising the 39 unexhausted claims.  (Doc. No. 1 at 15-35.)

Respondent makes no argument, nor does it appear to the Court, that Jaeger has engaged in "intentionally dilatory litigation tactics."  Rather, it appears Jaeger has been diligently pursuing his rights in state court.

Under these circumstances, the Court concludes it would not be an abuse of discretion to hold Jaeger's Petition in abeyance until Jaeger's state remedies are exhausted.  Therefore, it is recommended the Court STAY this case pending resolution of Jaeger's unexhausted claims in the state courts on the condition that Jaeger: (1) file quarterly status reports in this Court regarding the progress of state court proceedings that are limited strictly to apprising the Court of the current status of those proceedings; (2)

---

[11] While Respondent argues all of Jaeger's claims are "meritless," Respondent does not argue his claims are "plainly meritless."  (Doc. No. 11 at 5.)

22

refrain from filing any other materials with this Court while this case is stayed; and (3) seek reinstatement on this Court's active docket within thirty (30) days of fully exhausting his state court remedies

### IV.     Jaeger's Motions

#### A.     Motion for Summary Judgment and Declaratory Judgment

Jaeger contends he is entitled to summary judgment and declaratory judgment because Respondent had until February 10, 2020 to show cause as to why a writ of habeas corpus should not issue, Respondent did not do so, and therefore Respondent did not challenge Jaeger's claims.  (Doc. No. 10-1 at 12.) However, Respondent moved for, and was granted, an extension of time to answer Jaeger's Petition. (Doc. No. 8; Non-document order dated February 10, 2020.)  The fact Jaeger disagrees with the extension of time[12] does not mean Respondent failed to challenge his claims, nor entitle him to summary judgment and a declaratory judgment.  Therefore, it is recommended Jaeger's Motion for Summary Judgment and Declaratory Judgment (Doc. No. 10) be DENIED.

#### B.     Motion to Strike

Jaeger moved to strike Respondent's Motion to Dismiss as "out of rule" and "out of order," again challenging the extension of time to respond granted by the Court.  (Doc. No. 17 at 1, 7-8.)  In addition, Jaeger asserts Respondent failed to comply with this Court's orders by failing to file a record, failing to file an answer, and failing to brief the merits after moving to dismiss on grounds of procedural default. (*Id.* at 9-11.)

Jaeger's contentions are without merit.  Respondent sought, and was granted, an extension of time to answer his Petition.  (Doc. No. 8; Non-document order dated February 10, 2020.)  Respondent was well within her rights and the rules of this Court to file a motion to dismiss Jaeger's Petition as a mixed petition

---

[12] Jaeger filed an objection to the Order granting Respondent an extension of time (Doc. No. 14), as well as a Motion to Vacate or Set Aside Judgment or Order (Doc. No. 15) challenging the extension of time. The Court denied Jager's Motion to Vacate or Set Aside Judgment.  (Doc. No. 16.)

in lieu of filing a Return of the Writ, along with the record.  Furthermore, Jaeger confuses a motion to dismiss on procedural default grounds with the Respondent's motion here, which is based on some of Jaeger's Petition containing both exhausted and unexhausted claims.  Jaeger's Motion to Strike is DENIED.

## C.    Motions for Appointment of Counsel

Jaeger asserts appointment of counsel is necessary as he "lacks skills and knowledge of procedural and other Constitutional issues" (Doc. No. 5) and complains he is being denied access to the courts because of, among other things, inadequate law library time, inadequate computer access, lack of printed legal materials, and lack of e-filing at Marion Correctional Institution (Doc. No. 22 at 12-13; 28-1 at 12-13).

A petitioner in a habeas proceeding generally has no constitutional right to counsel.  *See Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002).  However, an indigent petitioner seeking to vacate or to set aside a death sentence has a statutory right to appointed counsel, as well as expert and investigative services.  18 U.S.C. § 3599(a)(2).  Moreover, in both capital and non-capital cases, the court must appoint counsel for an indigent petitioner when an evidentiary hearing is required or when necessary for the petitioner's effective utilization of discovery.  *See* 28 U.S.C. § 2254 Rule 6(a) (2014).  In all other circumstances, the court has considerable discretion in deciding whether to appoint counsel.  *See* 28 U.S.C. § 2254(h) ("Appointment of counsel under this section shall be governed by section 3006A of title 18.").  18 U.S.C. § 3006A(a)(2)(B) provides in part:

> Whenever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under [§ 2254].

In deciding whether to grant a petitioner's motion for appointment of counsel, a court should consider the following factors: (1) whether the merits of the claim are colorable; (2) the ability of the

24

indigent to investigate crucial facts; (3) whether the nature of the evidence indicates that the truth will more likely be exposed where both sides are represented by counsel; (4) the capability of the indigent to present the case; and (5) the complexity of the legal issues raised by the complaint.  *See Oliver v. United States*, 961 F.2d 1339, 1343 (7th Cir. 1992).  *See also Baskerville v. Sheldon*, No. 5:18CV2277, 2019 WL 1128542, at *12 (N.D. Ohio March 12, 2019); *Roig v. Warden, Grafton Corr. Center*, No. 1:16CV1156, 2018 WL 4870762, at *3 (N.D. Ohio Oct. 9, 2018); *Hudson v. Sloan*, No. 4:17CV1885, 2018 WL 4055615, at *10 (N.D. Ohio May 11, 2018); *Ruffin v. Lazaroff*, No. 5:15CV2718, 2016 WL 7974123, at *16 (N.D. Ohio Nov. 1, 2016).

Jaeger is not seeking to set aside a death sentence in the instant case.  (Doc. No. 1.)  Moreover, Jaeger does not offer any compelling reasons why he believes he is entitled to appointment of counsel.  He does not assert that he labors under disabilities unusual for a *pro se* petitioner; nor do the issues raised in his petition seem unusually complex, although Jaeger maintains expert testimony is necessary to resolve his claims.  (Doc. No. 28-1 at 10.)  The Court recognizes the difficulties *pro se* litigants face when seeking a writ of habeas corpus.  Nevertheless, the Court has extremely limited resources to provide attorneys for *pro se* litigants, and it will do so only when exceptional circumstances warrant.  As Jaeger has not identified any such exceptional circumstances in this case,[13] his requests for appointment of counsel (Doc. Nos. 5, 10, 22, 28) are DENIED.

---

[13] While not specifically identified by Jaeger as grounds warranting appointment of counsel, the exhibits to Jaeger's motions for appointment of counsel at Doc. No. 22 include grievances concerning changes to law library access and legal materials in light of COVID-19.  (Doc. No. 22-2, PageID# 791-92.)  As the Court recommends staying and abeying this case while Jaeger exhausts his state court remedies, the Court declines to address whether any changes to law library access and legal materials as set forth in Jaeger's exhibits resulting from the novel coronavirus outbreak constitute exceptional circumstances warranting appointment of counsel at this time.

**D.      Motion to Proceed *in Forma Pauperis***

On May 1, 2020, Jaeger filed a motion to proceed *in forma pauperis* and an affidavit of indigency. (Doc. No. 20.)  However, Jaeger paid the $5.00 filing fee when he filed his habeas petition.  (Doc. No. 1.) Therefore, Jaeger's motion to proceed *in forma pauperis* (Doc. No. 20) is DENIED AS MOOT.

**E.      Motions to Expand the Record**

No record has been filed in this case.  Furthermore, the undersigned recommends staying and abeying this case until Jaeger's his state remedies are exhausted.  Therefore, Jaeger's motions to expand the record (Doc. Nos. 4, 19) are DENIED AS MOOT.

**F.      Motions for Investigator and Experts, Evidentiary Hearing, and Motion for Leave
          to Conduct Discovery**

As the undersigned recommends finding the Court stay and abey Jaeger's Petition until his state remedies are exhausted, the Court DENIES AS MOOT Jaeger's motions for investigator and experts, evidentiary hearing, and leave to conduct discovery.  (Doc. Nos. 5, 10, 18, 23, 24.)

### V. Conclusion

For all the reasons set forth above, it is recommended that Respondent's Motion to Dismiss be DENIED (Doc. No. 11) but that the case be STAYED pending resolution of Jaeger's unexhausted claims in the state courts on the condition that Jaeger (1) file quarterly status reports in this Court regarding the progress of state court proceedings that are limited strictly to apprising the Court of the current status of those proceedings; (2) refrain from filing any other materials with this Court while this case is stayed; and (3) seek reinstatement on this Court's active docket within thirty (30) days of fully exhausting his state court remedies.  It is also recommended Jaeger's motion for summary judgment and declaratory judgment (Doc. No. 10) be DENIED.  Jaeger's motion to strike the motion to dismiss (Doc. No. 17) is DENIED, as

are his motions for appointment of counsel (Doc. Nos. 5, 10, 22, 28).  Jaeger's remaining motions (Doc. Nos. 4, 5, 10, 18-20, 23-24) are DENIED AS MOOT.

Date:  May 28, 2020                                  *s/ Jonathan Greenberg*
                                                     Jonathan D. Greenberg
                                                     United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**