IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ENOCH JAEGER, | ) | CASE NO.  1:19-CV-02853-JPC |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE J. PHILIP CALABRESE |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN LYNEAL WAINWRIGHT, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| | ) | |

This matter has been referred to the undersigned United States Magistrate Judge for preparation of a Report and Recommendation pursuant to Local Rule 72.2(b)(2).  Before the Court is the Amended Petition of Enoch Jaeger ("Jaeger" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  At the time of the filing of the Amended Petition, Jaeger was in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the cases *State v. Jaeger*, Medina County Court of Common Pleas Case No.16-CR-0624.[1]

---

[1] The State represents that Jaeger's maximum sentence expired on October 9, 2021.  (Doc. No. 169 at 2.) "28 U.S.C. § 2254(a) provides that district courts have jurisdiction to entertain petitions for habeas relief 'only from persons who are *in custody* in violation of the Constitution or law or treaties of the United States.' *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (emphasis in original) (internal citation and quotation marks omitted). '[T]he habeas petitioner must be 'in custody' under the conviction or sentence under attack at the time his petition is filed.' *Id.* (citing *Carafas v. Lavallee*, 391 U.S. 234, 238 (1968))." *Parks v. Warden, Corr. Indus. Facility*, No. 1:17-CV-3, 2018 WL 3437208, at *2 (S.D. Ohio July 17, 2018), *report and recommendation adopted by* 2018 WL 3957390 (S.D. Ohio Aug. 17, 2018).  The Court notes Jaeger failed to update his address as required, and he continued to be served at his last known address at Marion Correctional Institution.  On July 27, 2023, the Court ordered Respondent serve Jaeger at the return address included in his notification of exhaustion of claims.  (Non-document Order dated July 27, 2023.)  On August 8, 2023, Respondent informed the Court that Jaeger had been served at the return address and the mail was returned to sender as undeliverable.  (Doc. No. 172.)

1

For the following reasons, the undersigned recommends that the Amended Petition (Doc. No. 78) be DENIED.

## I.      Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The Ohio Court of Appeals summarized the facts underlying Jaeger's conviction as follows:

> {¶ 2}  In September and October 2016, there were a series of breaking and entering offenses committed at gas station convenience stores in Medina County. During each offense, two men would use a large rock or block of concrete to smash open the glass door of the store then enter it carrying large garbage cans. Once inside, they quickly collected cartons of cigarettes inside the garbage cans then exited less than a minute later.

> {¶ 3}  On October 12, 2016, Mr. Jaeger and an accomplice attempted to commit a similar offense. The gas station they targeted, however, had been the site of one of the earlier offenses and had modified its front door in response. The men, therefore, were unable to break through the door. As they were driving away from the gas station in the accomplice's car, they were stopped by a sheriff's deputy for having only one operating headlight. The deputy determined that there were arrest warrants out for both Mr. Jaeger and the accomplice, so he took them into custody. During a search of the car, law enforcement found clothing that matched the clothing worn by the perpetrators of each of the gas station break-ins. They also found two garbage cans and a large rock in the trunk of the car. Mr. Jaeger later told a detective that he had knowledge of the workings of the entire operation and that, in exchange for immunity, he could tell the detective the identities of all of the individuals involved in the offenses, as well as those involved in transporting and selling the stolen cigarettes.

> {¶ 4}  The Grand Jury indicted Mr. Jaeger for one count of vandalism, four counts of breaking and entering, three counts of theft, and one count of engaging in a pattern of corrupt activity. Following a number of continuances of the trial date, a jury found him guilty of the offenses. The trial court sentenced Mr. Jaeger to five years imprisonment. Mr. Jaeger has appealed, assigning three errors. We have reordered the second and third assignments of error for ease of disposition.

2

*State v. Jaeger*, 2018-Ohio-2994, 2018 WL 3624801, at *1 (Ohio Ct. App. 2018).

## II. Procedural History

### A.     Trial Court Proceedings

On October 26, 2016, a Medina County grand jury indicted Jager on one count of vandalism, four counts of breaking and entering, three counts of theft, and one count of engaging in a pattern of corrupt activity.  *See* Public Docket Sheet for *State v. Jaeger*, Medina County Court of Common Pleas No. 16-CR-0624; *State v. Jaeger*, 2018 WL 3624801, at *1.  A jury trial commenced on July 24, 2017.  *See* Public Docket Sheet for *State v. Jaeger*, Medina County Court of Common Pleas No. 16-CR-0624.  On July 26, 2017, the jury found Jaeger guilty on all counts.  *Id.*  On September 28, 2017, the trial court sentenced Jaeger to 12 months on Count One, 12 months on Count Two, five years on Count Three, and 12 months each on Counts Four through Nine, all to be served concurrently.  *Id.*

### B.     Direct Appeal

Jaeger, through counsel, filed a timely notice of appeal to the state appellate court.  *Id.*  In his appellate brief, he raised the following assignments of error:

I.     The trial court err[ed] by denying [Mr. Jaeger]'s motion to dismiss for speedy trial violations.

II.     The trial court err[ed] when the jury found [Mr. Jaeger] guilty without the greater weight of the evidence.

III.     The jury verdict is against the manifest weight of the evidence.

*State v. Jaeger*, 2018 WL 3624801, at **1-4.  On July 30, 2018, the state appellate court affirmed Jaeger's convictions.  *Id.* at **1-5.

On September 17, 2018, Jaeger, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio.  *See* Public Docket Sheet for *State v. Jaeger*, Supreme Court of Ohio Case 2018-1305.  In his Memorandum in Support of Jurisdiction, Jaeger raised the following Propositions of Law:

3

I.      The Court did err when they failed to dismiss appellants [sic] case because of a violation of Right to Speedy Trial.

II.     The Court did err when the appellant was found to be guilty and where the decision was against the sufficiency of evidence.

III.    The Court did err when the appellant was found to be guilty and where the decision was against the manifest weight of the evidence.

*Id.* On October 2, 2018, the State filed a memorandum in response to jurisdiction. *Id.*

On November 21, 2018, the Supreme Court of Ohio declined to accept jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4). *Id.*

**C.    Application to Reopen Appeal under Ohio App. R. 26(B)**

On November 5, 2018, Jaeger filed an Application to Reopen Appeal Pursuant to Ohio App. R. 26(B). *See* Public Docket for *State v. Jaeger*, Supreme Court of Ohio Case 2019-0407. Jaeger's Application asserted the following grounds: "ineffective assistance of counsel; threats by counsel, (trial counsel), speedy trial, greater weight, manifest weight, unlawful stop, search and seizure, right to be secure, due process, equal protection, procedural due process[,] self-representation, impartial jury, excessive bail, cruel and unusual punishment, self-incrimination, prosecutorial misconduct, abuse of discretion, kidnapping, unlawful conviction, unlawful imprisonment[,] conspiracy, forgery, fraud, engaging in a pattern of corrupt activity (RICO), ineffective assistance of appellate counsel." (Doc. No. 1 at 3.)

On February 6, 2019, the state appellate court denied the application as untimely. *See* Public Docket for *State v. Jaeger*, Supreme Court of Ohio Case 2019-0407.

On February 19, 2019, Jaeger filed a motion for reconsideration of his Application to Reopen Appeal. (Doc. No. 1 at 14.)

4

On March 19, 2019, Jaeger filed a notice of appeal and a memorandum in support of jurisdiction with the Supreme Court of Ohio.  *See* Public Docket Sheet for *State v. Jaeger*, Supreme Court of Ohio Case 2019-0407.

On May 3, 2019, the state appellate court denied the motion for reconsideration.  (Doc. No. 1 at 14.)

On May 29, 2019, the Supreme Court of Ohio declined to accept jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4).  *Id.*

On February 1, 2021, Jaeger filed a delayed application to reopen HIS direct appeal.  (Doc. No. 169-1, Ex. 91.)

On February 11, 2021, the State filed a brief in opposition to Jaeger's delayed application to reopen his direct appeal.  (Doc. No. 169-1, Ex. 92.)

On March 1, 2021, Jaeger filed a motion to strike Respondent's motion to dismiss, motion for judgment on the pleadings, motion for summary judgment, and motion for declaratory judgment.  (Doc. NO. 169-1, Ex. 93.)

On April 12, 2021, the state appellate court denied the delayed application to reopen and Jaeger's other pending motions.  (Doc. No. 169-1, Ex. 94.)

**D.     Post-Conviction Motions[2]**

On January 2, 2019, Jaeger filed a Petition to Vacate or Set Aside Judgment,[3] as well as motions for post-conviction discovery, correction or modification of record, independent investigator, and expert assistance in forgery, audio/video recording tampering, and stenography/transcript manipulation,

---

[2] The following summary includes relevant post-conviction filings; it is not an exhaustive list of the plethora of post-conviction motions Jaeger has filed with the state trial and appellate courts.

[3] This document is not available on the state court docket.  *See* Public Docket Sheet for *State v. Jaeger*, Medina County Court of Common Pleas No. 16-CR-0624.

alteration, or tampering.  *See* Public Docket Sheet for *State v. Jaeger*, Medina County Court of Common Pleas No. 16-CR-0624.  On January 7, 2019, Jaeger filed supplemental facts to petition for post-conviction relief.  *Id.*

On January 10, 2019, the State filed an opposition to Jaeger's motions for appointment of counsel, appointment of an independent investigator and experts, and post-conviction discovery.  *Id.*  On January 14, 2019, Jaeger filed "Supplemental Facts for Claims and Petition for Post-Conviction Relief."  *Id.*  On January 28, 2019, Jaeger filed a supplemental affidavit of facts as well as a motion for new trial, in addition to other motions.  *Id.*

On February 11, 2019, Jaeger filed "Supplemental Facts for Claims and Petition for Post-Conviction Relief."  *Id.*  On February 12, 2019, the State filed its opposition to Jaeger's motion for new trial due to newly discovered evidence, as well as its opposition to Jaeger's Petition to Vacate or Set Aside Judgment of Conviction and Motion to Dismiss without Hearing.[4]  *Id.*  On March 13, 2019, Jaeger filed a reply,[5] which the State moved to strike.  *Id.*  On April 1, 2019, Jaeger moved to strike the State's opposition to his post-conviction petition, as well as its motion to strike his reply brief.  *Id.*

On September 6, 2019, Jaeger filed a motion for leave to file application and motion for new trial, an application for order allowing motion for new trial, and a motion for new trial due to newly discovered evidence.  *Id.*  On October 28, 2019, Jaeger filed a motion for order of summary judgment, motion for order to reverse conviction and sentence, and motion for order to dismiss case with prejudice.  *Id.*  On November 20, 2019, Jaeger filed a motion for modification of sentence.  *Id.*  On December 16, 2019, Jaeger filed supplemental claims to his post-conviction petition, as well as motion to file supplemental claims to post-conviction petition, and a motion for relief from judgment or order.  *Id.*

---

[4] These documents are not available on the state court docket.  *Id.*
[5] This document is not available on the state court docket.  *Id.*

On January 2, 2020, Jaeger filed motions for summary judgment.  *Id.*  On January 10, 2020, Jaeger filed an addendum to his motion for modification of sentence.  *Id.*

On March 2, 2020, Jaeger filed a complaint for writ of procedendo.  *See* Public Docket Sheet for *State v. Jaeger*, Medina County Court of Common Pleas No. 16-CR-0624.  This complaint is captioned with the state appellate court information but bears the file stamp of the Medina County Clerk of Courts. *Id.*

On June 18, 2020, the trial court granted the State's motion to dismiss Jaeger's post-conviction petition and denied all pending motions.  (Doc. No. 93-2, Ex. 40.)

On August 27, 2020, Jaeger appealed the June 18, 2020 trial court order dismissing his post-conviction petition and denying all pending motions.  (Doc. No. 169-1, Ex. 79.)

On September 22, 2020, the Medina County Clerk of Court filed a request for review of jurisdiction, based on the date the appeal was filed and the date the order was issued, or in the alternative, for an extension of time to file the record.  (Doc. No. 169-1, Ex. 80.)

On September 28, 2020, the state appellate court granted an extension of time to file the record. (Doc. No. 169-1, Ex. 81.)

On June 30, 2021, Jaeger filed his appellate brief and raised the following assignments of error:

I.   THE COURT ERRED WHEN IT DETERMINED THAT RES JUDICATA APPLIED TO JAEGER'S CLAIMS.

II.  JAEGER IS ENTITLED TO A COMPLETE TRANSCRIPT OF PROCEEDINGS ON DIRECT APPEAL AND PETITION FOR POST-CONVICTION RELIEF; AND CANNOT PRESENT AN ADEQUATE DIRECT APPEAL OR PETITION FOR POST-CONVICTION RELIEF ABSENT A COMPLETE TRANSCRIPT.

III. JAEGER'S APPELLATE COUNSEL WAS INEFFECTIVE FOR, INCLUDING BUT NOT LIMITED TO, NOT OBTAINING A COMPLETE TRANSCRIPT AND/ OR RECORD FOR DIRECT APPEAL.

IV.     THE COURT ABUSED ITS DISCRETION BY WITHHOLDING A COMPLETE TRANSCRIPT, AND CAUSED JAEGER TO BE PREJUDICED, THEREBY MATERIALLY AFFECTING HIS SUBSTANTIAL CONSITUTIONAL RIGHTS, INCLUDING BUT NOT LIMITED TO THE 1st, 5th, AND 14th.

(Doc. No. 169-1, Ex. 82.)  On July 22, 2021, the State filed a brief in opposition (Doc. No. 169-1, Ex. 83),

to which Jaeger replied.  (Doc. No. 169-1, Ex. 84.)

On June 27, 2022, the state appellate court affirmed the trial court's denial of Jaeger's petition for

post-conviction relief.  (Doc. No. 169-1, Ex. 85.)

On July 7, 2022, Jaeger filed a motion for reconsideration.  (Doc. No. 169-1, Ex. 86.)

On September 29, 2022, the state appellate court denied the motion for reconsideration.  (Doc. No.

169-1, Ex. 87.)

On August 11, 2022, Jaeger filed a notice of appeal with Supreme Court of Ohio.  (Doc. No. 169-

1, Ex. 88.)  In his Memorandum in Support of Jurisdiction, Jaeger raised the following Propositions of

Law:

I.      THE COURT ERRED WHEN IT DETERMINED THAT RES JUDICATA APPLIED TO APPELLANT'S CLAIMS.

II.     APPELLANT IS ENTITLED TO A COMPLETE TRANSCRIPT OF PROCEEDINGS ON DIRECT APPEAL AND PETITION FOR POST-CONVICTION RELIEF; AND CANNOT PRESENT AN ADEQUATE DIRECT APPEAL OR PETITION FOR POST-CONVICTION RELIEF ABSENT A COMPLETE TRANSCRIPT.

III.    APPELLANT'S APPELLATE COUNSEL WAS INEFFECTIVE FOR, INCLUDING BUT NOT LIMITED TO, NOT OBTAINING A COMPLETE TRANSCRIPT AND/ OR RECORD FOR DIRECT APPEAL.

IV.     THE COURT ABUSED ITS DISCRETION BY WITHHOLDING A COMPLETE TRANSCRIPT, AND CAUSED APPELLANT TO BE PREJUDICED, THEREBY MATERIALLY AFFECTING HIS SUBSTANTIAL CONSITUTIONAL RIGHTS, INCLUDING BUT NOT LIMITED TO THE FIST [SIC], FIFTH, SIXTH, EIGHTH, NINTH, TENTH, AND FOURTEENTH AMENDMENTS.

(Doc. No. 169-1, Ex. 89.)

On January 17, 2023, the Supreme Court of Ohio declined to accept jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4).  (Doc. No. 169-1, Ex. 90.)

**E.      Federal Habeas Petition**

On November 25, 2019,[6] Jaeger, *pro se*, filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

**Ground One**: Due process violated and offended, procedural due process violated and offended.

**Supporting Facts**: See attachment.

1.  Prosecutor withheld vital evidence that would exonerate petitioner
2.  Prosecutor lied under oath on June 25, 2017 and during trial
3.  Prosecutor presented prejudiced materials not objected to by counsel, not previously given to counsel before presented at trial
4.  The judge denied any evidentiary hearing, though requested many times
5.  The judge failed to hear pre-trial motion on 7.24.17 prior to commencement of trial
6.  Judge denied recusal and/or discharge of prejudicial counsel, though aware of prejudice

**Ground Two**: Speedy Trial violation.

**Supporting Facts**: See attachment.  Petitioner arrested on Oct. 12, 2016.  Trial set for Jan. 10, 2017.  Continuance filed with no consent on Jan. 09, 2017.  Continuance filed on Feb. 25, 2017 never journalized.  Motion to continue on Mar. 27, 2017 never journalized.  Motion to continue on May 01, 2017 no consent, not journalized until May 02, 2017.  Motion to continue on June 05, 2017 requested by State, not journalized until June 06, 2017.  Transcripts of proceedings reflect def. counsel as requesting to continue; however, audio transcripts will show that transcripts were altered by forgery + fraud

---

[6] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until December 6, 2019, Jaeger states that he placed it in the prison mailing system on November 25, 2019.  (Doc. No. 1 at 39.)  Thus, the Court will consider the Petition as filed on November 25, 2019.

**Ground Three**: Manifest weight of evidence

> **Supporting Facts**: See attachment[.]  Counsel wrongly implied admission of guilt in one count.  Evidence presented by State was inadmissible, contaminated, not supportive of guilt.  Video evidence by police confirms others beside Petitioner and exonerate him (withheld by State – Brady).  The MO of person in three instances significantly differ; however not raised by ineffective counsel.

**Ground Four**: Sufficiency of evidence

> **Supporting Facts**: Evidence is contaminated and doesn't support guilty verdict.  Evidence is inadmissible.  Video evidence by police confirms others than Petitioner and exonerates him (withheld by prosecutor – Brady)[.]  The MO of person involved significantly differs in video evidence and does not support a guilty verdict.  Facts not raised by ineffective counsel

**Ground Five**: Felonious Assault and Battery – See attachment

> **Supporting Facts**: [T]he police, state, court, and counsel did forcefully detain and constrain petitioner unlawfully through means of physical force, threats, coercion, and intimidation, and force him to participate in unlawful proceedings.  Threats of counsel witnessed by Sheriff deputies at the jail (Medina County) and in the jury room prior to the commencement of trial, whereby, the deputy asked counsel to "step outside and take a break."

**Ground Six**: Kidnapping and Abduction – See attachment

> **Supporting Facts**: Parties did by force, threat, and deception kidnapp [sic] and/or abduct Petitioner unlawfully, and held him against his will, and by use of excessive bail did subject him to other violations of criminal and civil forfeitures.

**Ground Seven**: Unlawful Conviction and False Imprisonment – See attachment

> **Supporting Facts**: Conviction predicated on fraud, forgery, conspiracy, and other illicit acts of the parties against Petitioner.  Unlawful stop by means of an EMP device.  No authority to detain, search, or arrest.  The Court participated in tampering.  Judges signatures are forged.  Transcripts tampered.  Jury biased by prosecutor lying that he could not procure jury for trial, while witnesses and jury members sat in courtroom.  Financial records to confirm their presence.  Petitioner exposed to jury wearing jail garb and handcuffed.

**Ground Eight**: Conspiracy – See attachment

10

**Supporting Facts**: Parties did conspire together to commit unlawful acts, and acted in concert to deprive Petitioner of substantial civil rights, while committing other illicit acts.  Parties conspired to obstruct petitioner from acting on his own behalf and denied him all requests for evidentiary hearing and did not allow him to participate in his defense.  Parties conspired to forge judge's signatures and alter transcripts, and enter false testimony into record.  The Court did not file many of Petitioner's motions for defense.

**Ground Nine**: Fraud – See attachment

**Supporting Facts**: Parties by fraud, Racketeering, forgery, tampering, and other illicit acts, did participate to defraud a United States Citizen of civil rights.  Parties did by fraud unlawfully detain, search, and seize petitioner, and deprive him of fairness and honest services of Governmental functions and persons.  Parties entered fraudulent information into record to unlawfully convict and false imprison petitioner.

**Ground Ten**: Wire Fraud – See attachment

**Supporting Facts**: Parties did commit wire fraud through illicit acts by use of computes [sic], writings, radio, false testimony, and other transmissions by wire for purposes to defraud a United States Citizen.  Parties forged documents and transcripts, and signatures using government resources to participate in criminal activity including conspiracy, fraud, forgery, and engaged in a pattern of corrupt activity to interfere with civil rights of another.  All orders and judgments, including on Dept. of Corrections computers are fraudulent and unlawful.

**Ground Eleven**: Forgery – See Attachment

**Supporting Facts**: Judge's signatures are forged.  Journal entries and Transcripts are forged.  Parties Knowingly and willing participated in fraud by means of forgery and other illicit acts.  Parties possessed with the purpose to alter photographs, video evidence, documents, testimony, and other [sic] to facilitate a fraud and interfere with the civil rights of a United States citizen.  Parties pre-time stamped document.

**Ground Twelve**: Tampering – See Attachment

**Supporting Facts**: Police and prosecutor tampered with evidence, records, and other [sic], in order to obstruct by means of fraud unlawfully convict Petitioner.  The Court tampered with records, documents, transcripts, audio/video, computers, and other [sic], in conspiracy and acts of fraud, forgery, and engaged in a pattern

11

of corrupt activity, to unlawfully convict and sentence petitioner.  The prosecutor and counsel tampered with the jury to bias petitioner.

**Ground Thirteen**: Engaging in a Pattern of Corrupt Activity – See Attachment

> **Supporting Facts**: Police acted through unlawful enterprise to offend unlawful stop, search, seizure of person and property, and did conspire to commit other illicit acts, including fraud, wire fraud, and others.  The State, prosecutors, the Court, and counsel(s) did participate through unlawful enterprise by forging documents, withholding evidence tampering, obstructing, and others.  Testimony given under oath is false.  Court reporters spent considerable time with jury during deliberations.  Intentional verbal and non verbal cues to bias Petitioner were had during trial.

**Ground Fourteen**: Unlawful Stop, Search, and Seizure – See Attachment

> **Supporting Facts**: Police used unlawful means to initiate unlawful stop – an EMP device.  Police did without cause or articulable suspicion of a crime, did unlawfully detain, search, and seize petitioner and property.  Police used faulty methods for evidence collection, storage, and production of evidence.  Police lied in reports, and again on the stand – which contradict statements in report.  Police knowingly disregard evidence, exculpatory in nature, that would exonerate Petitioner.  The State, by and through prosecutors, and the Court, by and through judge and counsels participate in the obstruction of evidence and supported unlawful and illicit acts.

**Ground Fifteen**: Subject Matter Jurisdiction – See Attachment

> **Supporting Facts**: Offenses occurred outside jurisdiction of Court and not lawfully bound over.  Appearance before the Court predicated on unlawful and illicit acts.  Parties breached its contract with Petitioner, therefore, outside of jurisdiction of Court.  Parties unlawf [sic] forced Petitioner to participate in proceedings.  Improper indictment induced by State presenting Petitioner as African American, though he isn't, and it is unlawful to do so.

**Ground Sixteen**: Equal Protection of law – See Attachment

> **Supporting Facts**: Police denied equal protection through illicit acts against Petitioner, and through unlawful testimony, obstruction, tampering, and others, to deny equal protection and other civil rights.  The Court, State, and Counsel denied equal protection through fraud, forgery, obstruction, tampering, and others, to

12

deny Petitioner civil rights. The Court and judge denied Petitioner any evidentiary and suppression hearing.

**Ground Seventeen**: Right to be secure – See Attachment

    **Supporting Facts**: Police acted illicitly to violate Petitioner [sic] right to be secure and did unlawfully search and seize his person and property, without probable cause, did deprive Petitioner of life, liberty, and property.  The State and Court enforced laws which abridged the privileges and immunities of Petitioner, a citizen of the United States, and did deprive him of life, liberty, and property; and denied him right to any defense, and to produce exculpatory evidence or otherwise participate in defense.

**Ground Eighteen**: Excessive Bail – See Attachment

    **Supporting Facts**: The Court imposed excessive bail by the way of cash bond in the amount of One Hundred and Fifty Thousand dollars (150,000) on each of the eight (8 [sic] counts and no bond on the ninth, to prejudice the Petitioner and obstruct his defense by prejudiced appointed counsel.  Petitioner was held in jail unlawfully through excessive bail, whereby he could not obtain and produce any discovery, evidence, and secure witnesses and counsel for defense.

**Ground Nineteen**: Cruel and Unusual Punishment – See Attachment

    **Supporting Facts**: Police subjected petitioner to gunpoint, arrest, unlawful detention, and exploit[ed] him by illicit acts perpetrated on him.  The Court imposed unusual punishment on Petitioner, though aware of violations against him and despite the fact of knowing innocence, did participate in illicit acts to inflict unusual punishment, and deprive him of life, liberty, and property, among others.

**Ground Twenty**: Self-Incrimination – See Attachment

    **Supporting Facts**: The State and Police unlawfully compelled Petitioner to be a witness against himself by offering, through deception and coercion, a plea agreement for testimony in exchange for immunity from prosecution and dismissal of the case, and once the conversation was had, used the information against him.  Counsel and the Court participated in this breach of contract and participated in fraud, obstruction, tampering and others to violate Petitioner's civil rights.

**Ground Twenty-One**: Police, Prosecutorial, Counsel Misconduct – See Attachmen[t]

**Supporting Facts**: Police tainted evidence and lied under oath, withheld information and evidence, unlawfully used EMP device to induce stop. Prosecutor lied on record and withheld evidence. Broke plea agreement and used information against Petitioner. Counsel threated Petitioner, failed to investigate, and participated in fraud, forgery, tampering, and obstruction, among others to prejudice proceedings.

**Ground Twenty-Two**: Abuse of discretion – See Attachment

**Supporting Facts**: The Court abused its discretion by judge not allowing any evidentiary hearing and by denying motions presented by Petitioner, and refusing to hear motions on July 24, 2017 prior to the commencement of trial. Counsel objected to judge not allowing any hearing – check sentencing transcripts. Court abused its discretion by denying Petitioners [sic] request for Pro Se appearance, and by denying him to discharge prejudicial counsel prior to trial. Abuse of discretion through excessive bail. Abuse through excessive sentencing disparity. Abuse through allow [sic] contaminated evidence into trial and impartial jury to decide verdict. Abuse through forgery of documents and signatures and transcripts.

**Ground Twenty-Three**: Impartial Jury – See Attachment

**Supporting Facts**: Petitioner presented as Black to all white jury. Presented by State as Black to grand jury for indictment. Jury members exposed to petitioner wearing jail garb and shackled. Petitioner wearing jail slippers during trial. Jury members made prejudicial comments during selection. Jury member friend of counsel.

**Ground Twenty-Four**: Ineffective Assistance of Counsel – See Attachment

**Supporting Facts**: Counsel failed to investigate any matters or present any mitigating evidence or call any witnesses or file relevant motions, including motion to supress [sic], didn't object to prejudicial evidence presented at trial and not given in discover[y], failed to assess the merits for defense, did not discuss the merits on fact and of alternative strategies for defense. Appellate counsel failed in the same.

**Ground Twenty-Five**: Freedom of Speech – See Attachment

**Supporting Facts**: The Court fixed a shocking device on leg of Petitioner and directed him not to speak during trial. Counsel failed to raise relevant issues and file motions and present evidence, though directed by Petitioner to do so. The

14

Court did not allow Petitioner to speak at hearings or present mitigating and exculpatory evidence, and refused to file many motions by Petitioner.

**Ground Twenty-Six**: Denied Access to the Court – See Attachment

    **Supporting Facts**: Police denied access to the Court by unlawful acts to tamper and obstruct evidence.  Counsel denied access to the Court by forgery, fraud, obstruction, and tampering, and failing to act on behalf of Petitioner.  The State denied access by the same means.  The Court denied access to the court by refusing to allow any evidentiary hearings and denying Petitioner's motions, and allowing tainted and unlawful evidence into record.  The Court denied access by unreasonable bail and refusing discharge of prejudicial and biased counsel, so that Petitioner could not secure a defense or otherwise act on his own behalf.  The judge was/is aware of the many violations and offences against the Petitioner.

**Ground Twenty-Seven**: Obstruction – See Attachment

    **Supporting Facts**: Police participated in obstruction by giving false testimony and evidence.  Tampering with evidence.  The State obstructed by coercing and breaking a plea agreement which they later used that information to prosecute Petitioner once obtained.  Prosecutors lied on record.  Counsel obstructed by threats and intimidation, and by refusing to file motions and act on Petitioner's defense, and forging documents.  The Court obstructed by refusing evidentiary hearings, forging judge's signatures, tampering with records, including transcripts, and concealing documents.

**Ground Twenty-Eight**: Interfering with Civil Rights – See Attachment

    **Supporting Facts**: Parties knowingly and willfully participated in interfering with civil rights.  Police used unlawful device (EMP) to initiate unlawful stop, detention, search and seizure of Petitioner, and lied on record.  The State lied on record and used coercion and threat to obtain plea agreement, later used as confession, to false [sic] imprison Petitioner[.]  Counsel by threat and intimidation assaulted Petitioner and forged documents, and derelict [sic] of duty, to convict unlawfully.  The Court tampered with evidence and forged documents, used excessive bail to false [sic] imprison Petitioner.

**Ground Twenty-Nine**: Civil action for deprivation of rights – See Attachment

    **Supporting Facts**: The Court ignored issues surrounding its knowledge of illicit acts against the Petitioner, and did participate and share in them by acts of forgery, tampering, obstruction, fraud, and engaging in a pattern of corrupt

activity, among others.  The Police, The State and its prosecutors and prisons, and counsel also participated in illicit and unlawful acts to deprive Petitioner of civil and other rights.

**Ground Thirty**: Conspiracy to interfere with Civil Rights – See Attachment

> **Supporting Facts**: Parties conspired together in corrupt and illicit acts to interfere with the Civil Rights of the Petitioner by means of false arrest and imprisonment by police; false imprisonment by the Court through excessive bail, forged documents, tampered transcripts, among others.  The State conspired with the police, counsel, and the Court to false [sic] imprison Petitioner by unlawful means and breach of contract though deception.  Counsel similarly participated in the same.

**Ground Thirty-One**: Action for neglect to prevent conspiracy

> **Supporting Facts**: The Police, State, Court and Counsel knowingly and willingly participated and shared in illicit acts against Petitioner by commission or omission and failed to act through neglect and/or implicitly or explicitly to prevent conspiracy that resulted in substantial violations and offenses of Petitioner's civil rights.

**Ground Thirty-Two**: Extortion under color of official right

> **Supporting Facts**: a.-e. See pg. 12; Petitioner incorporates, restates, and re-alleges each and every preceding paragraph, as well as those in affidavits, motions, petitions and other papers filed in the Court

**Ground Thirty-Three**: Fraud involving the deprivation of the intangible right to honest services of public officials.

> **Supporting Facts**: a.-e. See pg. 12m Gr. 32

**Ground Thirty-Four**: Conspiracy to defraud by interference with Governmenta[l] Functions

> **Supporting Facts**: a.-e. See pg. 12m Gr. 32

**Ground Thirty-Five**: Malicious Prosecution

> **Supporting Facts**: a.-e. See pg. 12m Gr. 32

**Ground Thirty-Six**: Involuntary Servitude

16

**Supporting Facts**: By and through the Police, Court, State, and Counsel, and Prisons in illicit acts including conspiracy, fraud, forgery, tampering, obstruction, and engaging in a pattern of corrupt activity, among others, Petitioner was/is denied substantial civil rights and subjected to involuntary servitude at the prison.

**Ground Thirty-Seven**: Breach of Contract

**Supporting Facts**: a.-e. See pg. 12m Gr. 32

**Ground Thirty-Eight**: Libel

**Supporting Facts**: a.-e. See pg. 12m Gr. 32

**Ground Thirty-Nine**: Slander

**Supporting Facts**: a.-e. See pg. 12m Gr. 32

**Ground Forty**: Legal malpractice

**Supporting Facts**: a.-e. See pg. 12m Gr. 32

**Ground Forty-One**: Personal Injury

**Supporting Facts**: a.-e. See pg. 12m Gr. 32

**Ground Forty-Two**: Failure to investigate

**Supporting Facts**: a.-e. See pg. 12m Gr. 32

(Doc. No. 1 at 15-35.)

On the same day the Court received Jaeger's Petition, the Court also received Jaeger's Motion to Expand the Record (Doc. No. 4) and Motion for Appointment of Counsel, Motion for Relief from a Judgment or Order, and Motion for Evidentiary Hearing (Doc. No. 5).  Respondent did not file a response to these motions.

On February 27, 2020, Jaeger filed a Motion for Summary Judgment, Motion for Declaratory Judgment, Motion for Appointment of Counsel, and Motion for Appointment of Experts, and requested an evidentiary hearing.  (Doc. No. 10.)

17

On March 6, 2020, Respondent filed a Motion to Dismiss Mixed Petition.  (Doc. No. 11.)  On March 26, 2020, Jaeger sought an extension of time until May 5, 2020 to respond to the motion to dismiss. (Doc. No. 12.)  The Court granted Jaeger's motion for extension of time.  (Non-document Order dated March 30, 2020.)

On May 1, 2020, Jaeger filed a Motion to Strike Respondent's Motion to Dismiss Mixed Petition. (Doc. No. 17.)  That same day, Jaeger filed a Motion for Investigator and Experts (Doc. No. 18), Motion for Order Expanding the Record (Doc. No. 19), Motion to Proceed in Forma Pauperis (Doc. No. 20), Motion for Appointment of Counsel (Doc. No. 22), Motion for Evidentiary Hearing (Doc. No. 23), and Motion for Leave to Conduct Discovery (Doc. No. 24).

On May 15, 2020, Respondent filed an opposition to Jaeger's Motion for Investigator and Experts (Doc. No. 18), Motion for Order Expanding the Record (Doc. No. 19), Motion for Appointment of Counsel (Doc. No. 22), Motion for Evidentiary Hearing (Doc. No. 23), and Motion for Leave to Conduct Discovery (Doc. No. 24).

On May 20, 2020, Jaeger filed yet another motion for appointment of counsel, as well as a motion for declaratory judgment, an application for injunctive relief and motion for restraining order, and an Amended Emergency Petition for Writ of Habeas Corpus.  (Doc. Nos. 28-31.)  On May 21, 2020, Jaeger filed a "Motion for Amended and Supplemental Pleadings."  (Doc. No. 32.)

On May 28, 2020, the undersigned recommended denying Respondent's motion to dismiss and to stay the case while Jaeger pursued his remaining state court remedies for his unexhausted claims.  (Doc. No. 33.)

On June 19, 2020, the Court adopted in part and modified in part the Report and Recommendation. (Doc. No. 52.)  The Court allowed Jaeger to file an amended petition on or before July 10, 2020, and ordered that the amended petition "must be filed as one freestanding document and may not append, or

18

seek to incorporate by reference, any other of his previous filings or petitions." (*Id.* at 6.)  The Court also ordered, "To the extent Jaeger seeks emergency or injunctive relief related to COVID-19—as he alludes to in numerous filings—he may file a separate motion solely limited to his claims and the relief he seeks pertaining to COVID-19, on or before June 30, 2020." (*Id.* at 7.)

After the Court's June 19, 2020, Jaeger filed several more motions, including a motion for the Court to vacate its June 19, 2020 order and for extension of time (Doc. No. 60), as well as objections to the undersigned's May 28, 2020 Report and Recommendation.  (Doc. No. 58.)

On July 13, 2020, the Court granted in part and denied in part Jaeger's motion to vacate and for extension of time.  (Doc. No. 63.)  The Court directed Jaeger to file "one amended petition to include all the claims for which he seeks relief" by August 14, 2020, and again ordered that Jaeger's amended petition "must be filed as one freestanding document and may not append, or seek to incorporate by reference, any other of his previous filings or petitions." (*Id.* at 8.)

On July 14, 2020, Jaeger filed a motion for evidentiary hearing, motion for leave to conduct discovery, and motion for discovery.  (Doc. No. 69.)

Although the Court directed Jaeger to file "one amended petition to include all the claims for which he seeks relief" (Doc. No. 63 at 8), he filed two separate petitions with two different sets of claims.

On July 15, 2020, Jaeger filed an Emergency Petition for Writ of Habeas Corpus, a Complaint and Affidavit, a motion to stay and abey, a motion for injunctive relief and restraining order, a motion for declaratory judgment, and a motion for appointment of counsel.  (Doc. Nos. 71-76.)

That same day, Jaeger also filed a 105-page "Complaint and Affidavit" (with exhibits totaling an additional 181 pages) that related to his COVID-19 and other conditions of confinement claims.  (Doc. No. 76.)

19

On July 22, 2020, Jaeger filed an Amended Petition for Writ of Habeas Corpus, a Judicial Notice, a Motion to Expand the Record, and a Notice of Filing Transcript. (Doc. Nos. 78-81.) Jaeger's Amended Petition set forth the following claims for relief:

> **GROUND ONE:** Substantive and Procedural Due Process violated and offended.
>
> > Supporting Facts: See attachments. 1. Prosecutor withheld vital evidence that would exonerate petitioner 2. Prosecutor lied under oath on June 05, 2017, and during trial 3. Prosecutor presented prejudiced materials not objected to by counsel, not previously given to counsel before presented at trial 4. The judge denied any evidentiary hearing, though requested many times 5. The judge failed to hear pre-trial motion on 7.24.17 prior to commencement of trial 6. Judge denied recusal and/or discharge of prejudicial counsel, though aware of prejudice
>
> **GROUND TWO:**  Speedy Trial violation.
>
> > Supporting Facts: See attachment. Petitioner arrested on October 12, 2016. Trial set for Jan. 10, 2017. Continuance filed with no consent on Jan. 09, 2017. Continuance filed on Feb. 25, 2017 never journalized. Motion to continue on Mar. 27, 2017 never journalized. Motion to continue on May 01, 2017 no consent, not journalized until May 02, 2017. Motion to continue on June 05, 2017 requested by State, not journalized until June 06, 2017. Transcript of proceedings reflect def. counsel as requesting to continue; however, audio transcripts will show that transcripts were altered by forgery + fraud
>
> **GROUND THREE:** Manifest weight of evidence
>
> > Supporting Facts: See attachment[.] Counsel wrongly implied admission of guilt in one count. Evidence presented by State was inadmissible, contaminated, not supportive of guilt. Video evidence by police confirms others beside Petitioner and exonerate him (withheld by State – Brady). The MO of person in three instances significantly differ; however not raised by ineffective counsel.
>
> **GROUND FOUR:** Sufficiency of evidence

Supporting Facts: Evidence is contaminated and doesn't support guilty verdict. Evidence is inadmissible. Video evidence by police confirms others than Petitioner and exonerates him (withheld by prosecutor – Brady)[.] The MO of person involved significantly differs in video evidence and does not support a guilty verdict. Facts not raised by ineffective counsel. See attachments

**GROUND FIVE:** Felonious Assault and Battery – See attachment

Supporting Facts: [T]he police, state, court, and counsel did forcefully detain and constrain petitioner unlawfully through means of physical force, threats, coercion, and intimidation, and force him to participate in unlawful proceedings. Threats of counsel witnessed by Sheriff deputies at the jail (Medina County) and in the jury room prior to the commencement of trial, whereby, the deputy asked counsel to "step outside and take a break."

**GROUND SIX:** Kidnapping and Abduction – See attachment

Supporting Facts: Parties did by force, threat, and deception kidnapp [sic] and/or abduct Petitioner unlawfully, and held him against his will, and by use of excessive bail did subject him to other violations of criminal and civil forfeitures.

**GROUND SEVEN:** Unlawful Conviction and False Imprisonment – See  attachment

Supporting Facts: Conviction predicated on fraud, forgery, conspiracy, and other illicit acts of the parties against Petitioner. Unlawful stop by means of an EMP device. No authority to detain, search, or arrest. The Court participated in tampering. Judges [sic] signatures are forged. Transcripts tampered. Jury biased by prosecutor lying that he could not procure jury for trial, while witnesses and jury members sat in courtroom. Financial records to confirm their presence. Petitioner exposed to jury wearing jail garb and handcuffed.

**GROUND EIGHT:** Conspiracy – See attachment

Supporting Facts: Parties did conspire together to commit unlawful acts, and acted in concert to deprive Petitioner of substantial civil rights, while committing other illicit acts. Parties conspired to obstruct

petitioner from acting on his own behalf and denied him all requests for evidentiary hearing and did not allow him to participate in his defense. Parties conspired to forge judge's signatures and alter transcripts, and enter false testimony into record. The Court did not file many of Petitioner's motions for defense.

**GROUND NINE:** Fraud – See attachment

Supporting Facts: Parties by fraud, Racketeering, forgery, tampering, and other illicit acts, did participate to defraud a United States Citizen of civil rights. Parties did by fraud unlawfully detain, search, and seize petitioner, and deprive him of fairness and honest services of Governmental functions and persons. Parties entered fraudulent information into record to unlawfully convict and false imprison petitioner.

**GROUND TEN:** Wire Fraud – See attachment

Supporting Facts: Parties did commit wire fraud through illicit acts by use of computes [sic], writings, radio, false testimony, and other transmissions by wire for purposes to defraud a United States Citizen. Parties forged documents and transcripts, and signatures using government resources to participate in criminal activity including conspiracy, fraud, forgery, and engaged in a pattern of corrupt activity to interfere with civil rights of another. All orders and judgements, including on Dept. of Corrections computers are fraudulent and unlawful.

**GROUND ELEVEN:** Forgery – See Attachment

Supporting Facts: Judge's signatures are forged. Journal entries and Transcripts are forged. Parties Knowingly and willing [sic] participated in fraud by means of forgery and other illicit acts. Parties possessed with the purpose to alter photographs, video evidence, documents, testimony, and other [sic] to facilitate a fraud and interfere with the civil rights of a United States citizen. Parties pre-time stamped document.

**GROUND TWELVE:** Tampering – See Attachment

Supporting Facts: Police and prosecutor tampered with evidence, records, and other [sic], in order to obstruct by means of fraud unlawfully convict Petitioner. The Court tampered with records,

22

documents, transcripts, audio/video, computers and other [sic], in conspiracy and acts of fraud, forgery, and engaged in a pattern of corrupt activity, to unlawfully convict and sentence petitioner. The prosecutor and counsel tampered with the jury to bias petitioner.

**GROUND THIRTEEN:** Engaging in a Pattern of Corrupt Activity – See Attachment

Supporting Facts: Police acted through unlawful enterprise to offend unlawful stop, search, seizure of person and property, and did conspire to commit other illicit acts, including fraud, wire fraud, and others. The State, prosecutors, the Court, and counsel(s) did participate through unlawful enterprise by forging documents, withholding evidence tampering, obstructing, and others. Testimony given under oath is false. Court reporters spent considerable time with jury during deliberations. Intentional verbal and non verbal [sic] cues to bias Petitioner were had during trial.

**GROUND FOURTEEN:** Unlawful Stop, Search, and Seizure – See Attachment

Supporting Facts: Police used unlawful means to initiate unlawful stop – an EMP device. Police did without cause or articulable suspicion of a crime, did unlawfully detain, search, and seize petitioner and property. Police used faulty methods for evidence collection, storage, and production of evidence. Police lied in reports, and again on the stand – which contradict statements in report. Police knowingly disregard evidence, exculpatory in nature, that would exonerate Petitioner. The State, by and through prosecutors, and the Court, by and through judge and counsels [sic] participate [sic] in the obstruction of evidence and supported unlawful and illicit acts.

**GROUND FIFTEEN:** Subject Matter Jurisdiction – See Attachment

Supporting Facts: Offenses occurred outside jurisdiction of Court and not lawfully bound over. Appearance before the Court predicated on unlawful and illicit acts. Parties breached its contract with Petitioner, therefore, outside of jurisdiction of Court. Parties unlawf [sic] forced Petitioner to participate in proceedings. Improper indictment induced by State presenting Petitioner as African American, though he isn't, and it is unlawful to do so. The court is a [sic] admiralty or maritime court, not having jurisdiction over affairs on land.

23

**GROUND SIXTEEN:** Equal Protection of law – See Attachment

> Supporting Facts: Police denied equal protection through illicit acts against Petitioner, and through unlawful testimony, obstruction, tampering, and others, to deny equal protection and other civil rights. The Court, State, and Counsel denied equal protection through fraud, forgery, obstruction, tampering, and others, to deny Petitioner civil rights. The Court and judge denied Petitioner any evidentiary and suppression hearing.

**GROUND SEVENTEEN:** Right to be secure – See Attachment

> Supporting Facts: Police acted illicitly to violate Petitioner [sic] right to be secure and did unlawfully search and seize his person and property, without probable cause, did deprive Petitioner of life, liberty, and property. The State and Court enforced laws which abridged the privileges and immunities of Petitioner, and citizen of the United States, and did deprive him of life, liberty, and property; and denied him right to any defense, and to produce exculpatory evidence or otherwise participate in defense.

**GROUND EIGHTEEN:** Excessive Bail – See Attachment

> Supporting Facts: The Court imposed excessive bail by the way of cash bond in the amount of One Hundred and Fifty Thousand dollars (150,000) on each of the eight (8 [sic] counts and no bond on the ninth, to prejudice the Petitioner and obstruct his defense by prejudiced appointed counsel. Petitioner was held in jail unlawfully through excessive bail, whereby he could not obtain and produce any discovery, evidence, and secure witnesses and counsel for defense.

**GROUND NINETEEN:** Cruel and Unusual Punishment – See Attachment

> Supporting Facts: Police subjected petitioner to gunpoint, arrest, unlawful detention, and exploit[ed] him by illicit acts perpetrated on him. The Court imposed unusual punishment on Petitioner, though aware of violations against him and despite the fact of knowing innocence, did participate in illicit acts to inflict unusual punishment, and deprived him of life, liberty, and property, among others.

**GROUND TWENTY:** Self-Incrimination – See Attachment

24

Supporting Facts: The State and Police unlawfully compelled Petitioner to be a witness against himself by offering, through deception and coercion, a plea agreement for testimony in exchange for immunity from prosecution and dismissal of the case, and once the conversation was had, used the information against him. Counsel and the Court participated in this breach of contract and participated in fraud, obstruction, tampering and others to violate Petitioner's civil rights.

**GROUND TWENTY-ONE:** Police, Prosecutorial, Counsel Misconduct –
See Attachmen[t]

Supporting Facts: Police tainted evidence and lied under oath, withheld information and evidence, unlawfully used EMP device to induce stop. Prosecutor lied on record and withheld evidence. Broke plea agreement and used information against Petitioner. Counsel threated [sic] Petitioner, failed to investigate, and participated in fraud, forgery, tampering, and obstruction, among others to prejudice proceedings.

**GROUND TWENTY-TWO:** Abuse of discretion – See attachment

Supporting Facts: The Court abused its discretion by judge not allowing any evidentiary hearing and by denying motion presented by Petitioner, and refusing to hear motions on July 24, 2017 prior to the commencement of trial. Counsel objected to judge not allowing any hearing – check sentencing transcripts. Court abused its discretion by denying Petitioners [sic] request for Pro Se appearance, and by denying him to discharge prejudicial counsel prior to trial Abuse of discretion through excessive bail. Abuse through excessive sentencing disparity. Abuse through allow [sic] contaminated evidence into trial and impartial jury to decide verdict. Abuse through forgery of documents and signatures and transcripts.

**GROUND TWENTY-THREE:** Impartial Jury – See Attachment

Supporting Facts: Petitioner presented as Black to all white jury. Presented by State as Black to grand jury for indictment. Jury members exposed to petitioner wearing jail garb and shackled. Petitioner wearing jail slippers during trial. Jury members made prejudicial comments during selection. Jury member friend of counsel.

**GROUND  TWENTY-FOUR:** Ineffective Assistance of Counsel –
See Attachment

25

Supporting Facts: Counsel failed to investigate any matters or present any mitigating evidence or call any witnesses or file relevant motions, including motion to suppress [sic], didn't object to prejudicial evidence presented at trial and not given in discover[y], failed to assess the merits for defense, did not discuss the merits on fact and of alternative strategies for defense. Appellate counsel failed in the same.

**GROUND TWENTY-FIVE:** Freedom of Speech – See Attachment

Supporting Facts: The Court fixed a shocking device on leg of Petitioner and directed him not to speak during trial. Counsel failed to raise relevant issues and file motions and present evidence, though directed by Petitioner to do so. The Court did not allow Petitioner to speak at hearings  or present mitigating and exculpatory evidence, and refused to file many motions by Petitioner.

**GROUND TWENTY-SIX:** Denied Access to the Court -See Attachment

Supporting Facts:  Police denied access to the Court by unlawful acts to tamper and obstruct evidence. Counsel denied access to the Court by forgery, fraud, obstruction, and tampering, and failing to act on behalf of Petitioner. The State denied access by the same means. The Court denied access to the court by refusing to allow any evidentiary hearings and denying Petitioner's motions, and allowing tainted and unlawful evidence into record. The Court denied access by unreasonable bail and refusing discharge of prejudicial and biased counsel, so that Petitioner could not secure a defense or otherwise act on his own behalf. The judge was/is aware of the many violations and offences against the Petitioner.

**GROUND TWENTY-SEVEN:** Obstruction – See Attachment

Supporting Facts:  Police participated in obstruction by giving false testimony and evidence. Tampering with evidence. The State obstructed by coercing and breaking a plea agreement which they later used that information to prosecute Petitioner once obtained. Prosecutors lied on record. Counsel obstructed by threats and intimidation, and by refusing to file motions and act on Petitioner's defense, and forging documents. The Court obstructed by refusing evidentiary hearing, forging judge's signatures, tampering with records, including transcripts, and concealing documents.

26

**GROUND TWENTY-EIGHT:** Interfering with Civil Rights – See Attachment

> Supporting Facts: Parties knowingly and willfully participated in interfering with civil rights. Police used unlawful device (EMP) to initiate unlawful stop, detention, search and seizure of Petitioner, and lied on record. The State lied on record and used coercion and threat to obtain plea agreement, later used as confession, to false [sic] imprison Petitioner[.] Counsel by threat and intimidation assaulted Petitioner and forged documents, and derelict [sic] of duty, to convict unlawfully. The Court tampered with evidence and forged documents, used excessive bail to false [sic] imprison Petitioner.

**GROUND TWENTY-NINE:** Civil action for deprivation of rights – See Attachment

> Supporting Facts: The Court ignored issues surrounding its knowledge of illicit acts against the Petitioner, and did participate and share in them by acts of forgery, tampering, obstruction, fraud, and engaging in a pattern of corrupt activity, among others. The Police, The [sic] State and its prosecutors and prisons, and counsel also participated in illicit and unlawful acts to deprive Petitioner of civil and other rights.

**GROUND THIRTY:** Conspiracy to interfere with Civil Rights – See Attachment

> Supporting Facts: Parties conspired together in corrupt and illicit acts to interfere with the Civil Rights of the Petitioner by means of false arrest and imprisonment by police; false imprisonment by the Court through excessive bail, forged documents, tampered transcripts, among others. The State conspired with the police, counsel, and the Court to false [sic] imprison Petitioner by unlawful means and breach of contract though [sic] deception. Counsel similarly participated in the same.

**GROUND THIRTY-ONE:**   Action for neglect to prevent conspiracy

> Supporting Facts: The Police, State, Court and Counsel knowingly and willingly participated and shared in illicit acts against Petitioner by commission or omission and failed to act through neglect and/or implicitly or explicitly to prevent conspiracy that resulted in substantial violations and offenses of Petitioner's civil rights.

**GROUND THIRTY-TWO:** Extortion under color of official right

    <u>Supporting Facts</u>: a.-e. See pg. 12; Petitioner incorporates, restates, and re-alleges each and every preceding paragraph, as well as those in affidavits, motions, petitions and other papers filed in the Court.

**GROUND THIRTY-THREE:** Fraud involving the deprivation of the intangible right to honest services of public officials.

    <u>Supporting Facts</u>: a.-e. See pg. 12m Gr. 32

**GROUND THIRTY-FOUR:** Conspiracy to defraud by interference with Governmenta[l] Functions

    <u>Supporting Facts</u>: a.-e. See pg. 12m Gr. 32

**GROUND THIRTY-FIVE:** Malicious Prosecution

    <u>Supporting Facts</u>: a.-e. See pg. 12m Gr. 32

**GROUND THIRTY-SIX:** Involuntary Servitude

    <u>Supporting Facts</u>: By and through the Police, Court, State, and Counsel, and Prisons in illicit acts including conspiracy, fraud, forgery, tampering, obstruction, and engaging in a pattern of corrupt activity, among others, Petitioner was/is denied substantial civil rights and subjected to involuntary servitude at the prison.

**GROUND THIRTY-SEVEN:** Breach of Contract

    <u>Supporting Facts</u>: a.-e. See pg. 12m Gr. 32

**GROUND THIRTY-EIGHT:** Libel

    <u>Supporting Facts</u>: a.-e. See pg. 12m Gr. 32

**GROUND THIRTY-NINE:** Slander

    <u>Supporting Facts</u>: a.-e. See pg. 12m Gr. 32

**GROUND FORTY:** Legal malpractice

    <u>Supporting Facts</u>: a.-e. See pg. 12m Gr. 32

**GROUND FORTY-ONE:** Personal Injury

Supporting Facts: a.-e. See pg. 12m Gr. 32

**GROUND FORTY-TWO:** Failure to investigate

Supporting Facts: a.-e. See pg. 12m Gr. 32

**GROUND FORTY-THREE:** Falsification

Supporting Facts: Persons and parties not limited to the Police, Prosecutors (State), Judge (Court), Counsel (Trial and Appellate), and Prison officials knowingly and willfully acted with deliberate indifference and/or malicious intent to falsify or deceive, frustrate, impede, obstruct, tamper and retatiate [sic], coerce, intimidate, interfere, destroy or alter the efforts of Jaeger to pursue remedy or relief for violations and offenses to which he was/is entitled and guaranteed in the Constitution or laws or treaties of the United States, causing immediate, permanent and future damage, injury or loss. – See attachments

**GROUND FORTY-FOUR:** Coercion –

Supporting Facts: See ground 43 and attachments

**GROUND FORTY-FIVE:** Intimidation –

Supporting Facts: See ground 43 and attachments

**GROUND FORTY-SIX:** Retaliation

Supporting Facts: See ground 43 and attachments

**GROUND FORTY-SEVEN:** Dereliction of Duty

Supporting Facts: See ground 43 and attachments

(Doc. No. 78.)

On September 3, 2020, Jaeger filed a motion for class certification, motion for appointment of counsel, motion for judgment on the pleadings, motion for judgment as a matter of law, entry of default by

the Clerk, motion for default judgment, motion for summary judgment, motion for declaratory judgment, motion for judicial notice, and motion for hearing on judicial notice.  (Doc. Nos. 95-98.)

On September 8, 2020, Jaeger filed a motion for court docket and notice of filing.  (Doc. No. 107.)

On September 21, 2020, Jaeger filed a motion for expedited review of injunctive relief due to imminent danger, motion for immediate and emergency hearing due to imminent danger, and motion to expedite appointment of counsel to facilitate discovery.  (Doc. No. 123.)

On October 21, 2020, Jaeger filed a motion for the United States government to intervene as a party, a motion for judicial notice with a request for a hearing, a motion to strike the Respondent's Return of Writ, a motion to stay and abey state court proceedings, a motion for extension of time on state court proceedings, a motion to enlarge parts of the record, and, despite the Court's admonition about refraining from filing duplicative motions, another motion for judgment as a matter of law and another motion for summary judgment.  (Doc. Nos. 133-35.)

On December 18, 2020, the undersigned issued a report and recommendation directed to the majority of the outstanding issues pending at that time.  (Doc. No. 137-1.)  The undersigned recommended the Court grant Petitioner's motion to stay and abey to the extent that his motions requested the Court to stay this case pending exhaustion of his claims in state court.  (*Id.*)

Jaeger filed objections to the report and recommendation.  (Doc. No. 144.)  Jaeger objected to, among other things, the undersigned's recommendation to stay and abey proceedings on his habeas petition pending exhaustion of his claims.  (Doc. No. 144.)  He also objected to construing various of his submissions to the Court as a request to stay and abey.  (*Id.*)

On June 22, 2021, the Court adopted in part the report and recommendation, stayed the case, and held it in abeyance pending exhaustion of the claims asserted in the Amended Petition in the state courts. (Doc. No. 164.)  In addition, the Court struck the following:  Jaeger's motion to update court internal

30

records (Doc. No. 70), motion for injunctive relief and restraining order (Doc. No. 72), motion for declaratory judgment (Doc. No. 73), motion for appointment of counsel (Doc. No. 75), complaint and affidavit (Doc. No. 76), judicial notice (Doc. No. 79), notice of filing of transcript (Doc. No. 81), motion for class certification and motion for appointment of counsel (Doc. No. 95), and motion for judgment on the pleadings, motion for judgment as a matter of law, motion for default judgment, motion for summary judgment, and motion for declaratory judgment (Doc. No. 96) for failure to comply with the Court's orders and the Local Rules.  (Doc. No. 164.)  With respect to Jaeger's emergency petition (Doc. No. 74), the Court denied and dismissed the emergency petition without prejudice.  (Doc. No. 164.)  In addition, the Court denied all other pending motions filed by Jaeger not specifically identified in the Order.  (*Id.*) The Court ordered Jaeger to file one document—not to exceed two pages in length—notifying the Court once the claims in his Amended Petition were completely exhausted.  (*Id.*)  Further, the Court ordered that Jaeger was not to file any other pleading, paper, or document while the case was stayed.  (*Id.*)

On February 23, 2023, Jaeger notified the Court that he had exhausted his claims in state court. (Doc. No. 165.)

On March 14, 2023, the Court reopened the case and re-referred this matter to the undersigned. (Doc. Nos. 166-67.)

That same day, the undersigned issued an order regarding supplemental briefing.  (Doc. No. 168.)

On April 13, 2023, Respondent filed a Supplemental Return of Writ.  (Doc. No. 169.)

Jaeger failed to file a Traverse.

### III. Exhaustion and Procedural Default

#### A.    Legal Standard

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the

31

state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[7] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally

---

[7] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition."  *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court.  To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39.

33

"Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir.  2012).

**B.      Application to Petitioner**

Respondent argues that all but Jaeger's second, third, and fourth grounds for habeas relief are procedurally defaulted, as Jaeger failed to fairly present these claims on direct review.  (Doc. No. 169 at 29-31.)  As all but Jaeger's second, third, and fourth grounds were presented in his petition for post-conviction relief, which the state courts rejected as barred by *res judicata*, "all but Jaeger's Second, Third, and Fourth grounds must be dismissed as procedurally defaulted due to his failure to fairly present them to

34

all levels of the Ohio courts, and the Ohio courts' enforcement of its rules of fair presentment." (*Id.* at 30-31.)

Respondent's arguments are uncontroverted, as Jaeger failed to file a Traverse.

The Court finds all but Grounds Two, Three, and Four are procedurally defaulted. Under Ohio's *res judicata* doctrine, a defendant is precluded from raising claims in a post-conviction proceeding which were fully litigated or could have been fully litigated at trial or direct appeal. *State v. Perry*, 10 Ohio St.2d 175, 180 (1967). *See also Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) (finding Ohio's *res judicata* doctrine is an adequate and independent state ground to procedurally bar claims asserted in federal habeas actions). As noted *supra*, all but Grounds Two, Three, and Four were not presented on direct appeal. Therefore, Ground One and Grounds Five through Forty-Seven are procedurally defaulted.

### 1.      Cause and Prejudice

Jaeger may nevertheless obtain a merits review of this claim if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren*, 440 F.3d at 763.

The Sixth Circuit has held that cause to excuse the procedural default of a habeas claim may exist if a petitioner's appellate counsel was ineffective in failing to raise the issue. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004); *Smith v. Ohio, Department of Rehab. and Corr.*, 463 F.3d 426, 432 (6th Cir. 2006); *Berry v. Warden, Southern Ohio Correctional Facility*, Case No. 3:14CV2518, 2016 WL 4177174, at *3 (N.D. Ohio Aug. 8, 2016). However, the underlying claim of ineffective assistance of counsel must in and of itself not be in default. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (finding unless the state prisoner can satisfy the

35

cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim).

As noted above, Jaeger did not raise Ground One and Grounds Five through Forty-Seven of his amended habeas petition on direct appeal.  However, Jaeger failed to timely file his App. R. 26(B) application to reopen his direct appeal, and the state appellate court dismissed his application as untimely. Therefore, ineffective assistance of appellate counsel cannot serve as cause to excuse the procedural default of these claims.

As Jaeger fails to show cause, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. at 533–34.

## 2.    Actual Innocence

As noted above, a petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman*, 501 U.S. at 749–50.  In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 324.  *See also Jones*, 489 F. Supp. 2d at 807; *Allen*, 2012 WL 3711552, at \*7.  A petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  *See Schlup*, 513 U.S. at 327.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Id*. at 316.

36

In his amended petition, Jaeger does not state he is actually innocent, nor does he present any new, reliable evidence of his innocence.  (Doc. No. 78.)  Therefore, the Court finds Jaeger has failed to demonstrate the procedural default of Ground One and Grounds Five through Forty-Seven should be excused on the basis of actual innocence.

## IV. Non-Cognizable Claim

In his third ground for relief, Jaeger asserts his convictions were against the manifest weight of the evidence.  (Doc. No. 78.)  Respondent asserts manifest weight of the evidence claims are not cognizable on federal habeas review.  (Doc. No. 169 at 29.)

The state appellate court considered Jaeger's manifest weight of the evidence claim on direct appeal and rejected it.  *State v. Jaeger*, 2018 WL 3624801, at *4.

It is well-established manifest weight of the evidence claims are not cognizable on federal habeas review.  *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Howard v. Tibbals*, No. 1:12 CV 1661, 2014 WL 201481, at *16 (N.D. Ohio Jan. 17, 2014); *Hess v. Eberlin*, No. 2:04-cv-1144, 2006 WL 2090093, at *6 (S.D. Ohio Jan. 17, 2006).  *See also Gibson v. Miller*, 5:15CV119, 2016 WL 6277229, at *1 (N.D. Ohio Oct. 27, 2016) ("[C]ontentions that a conviction is contrary to the manifest weight of the evidence also do not raise cognizable claims.").  Under Ohio law, an argument that a conviction is against the manifest weight of the evidence "requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *Hess*, 2006 WL 2090093, at *7 (quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App. 1983)).  Because a federal district court does "not function as an additional state appellate court, vested with the authority to

conduct such an exhaustive review," this Court cannot consider whether Jaeger's conviction was against the manifest weight of the evidence. *See id.*

Therefore, Ground Three is non-cognizable.

### V. Review on the Merits

**A.      Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005). Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612

38

(2012).  *See also Lopez v. Smith*, ––– U.S. ––––, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'" (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.  See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 F. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean

the state court's contrary conclusion was unreasonable." *Id*. at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id*. at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### 1. Ground Two

In Ground Two, Jaeger asserts a violation of his speedy trial rights. (Doc. No. 78.) Respondent argues:

> Over the years of his confinement in Ohio prisons, this claim has grown from that asserted before the appellate court in direct review (solely complaining that the June 5, 2017, continuance was filed without his consent) to now claiming various procedural defects with the other cotninuances and/or that they were requested without his consent, to baldly claiming the trial court records have been altered by unsupported assertions of forgery and fraud. All but his assertion of a violation of his constitutional speedy trial rights following the June 5, 2017, continuance are waived due to his failure to fairly present them in direct review.

(Doc. No. 169 at 39.)

Jaeger raised a sufficiency of the evidence claim to both the state appellate court and the Supreme Court of Ohio. (Doc. No. 93-1, Ex. 24, 28.) The state appellate court considered this claim on the merits and rejected it as follows:

> {¶ 5} Mr. Jaeger argues that the trial court should have dismissed the charges because the State violated his right to a speedy trial. A trial court's determination of speedy trial issues presents a mixed question of law and fact. *State v. Fields*, 9th Dist. Wayne No. 12CA0045, 2013-Ohio-4970, ¶ 8.

"When reviewing an appellant's claim that he was denied his right to a speedy trial, this Court applies the de novo standard of review to questions of law and the clearly erroneous standard of review to questions of fact." *Id.*, quoting *State v. Downing*, 9th Dist. Summit No. 22012, 2004-Ohio-5952, ¶ 36.

{¶ 6} "The right of an accused to a speedy trial is recognized by the Constitutions of both the United States and the State of Ohio." *State v. Pachay*, 64 Ohio St.2d 218, 219, 416 N.E.2d 589 (1980). "The statutory speedy trial provisions, R.C. 2945.71 et seq., constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor * * *." *Id.* at syllabus. Accordingly, "for purposes of bringing an accused to trial, the statutory speedy trial provisions of R.C. 2945.71 et seq. and the constitutional guarantees found in the United States and Ohio Constitutions are coextensive." *State v. O'Brien*, 34 Ohio St.3d 7, 9, 516 N.E.2d 218 (1987).

{¶ 7} R.C. 2945.71(C)(2) provides that "[a] person against whom a charge of felony is pending * * * [s]hall be brought to trial within two hundred seventy days after the person's arrest." "[E]ach day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). Thus, if the accused is held in jail in lieu of bail, the time within which the trial must be held is 90 days. See *id.* When calculating speedy trial time, the day of arrest is not to be counted. *State v. Friedhof*, 9th Dist. Medina No. 2505-M, 1996 Ohio App. LEXIS 3018, *8, 1996 WL 385612 (July 10, 1996), citing *State v. Steiner*, 71 Ohio App.3d 249, 250-251, 593 N.E.2d 368 (9th Dist.1991); See also Crim.R. 45(A). "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by [R.C. 2945.71]." R.C. 2945.73(B).

{¶ 8} An accused may waive his right to a speedy trial, so long as the waiver is knowingly and voluntarily made. *O'Brien* at 9, 516 N.E.2d 218. Such a waiver must be in writing or expressly made in open court on the record. *State v. King*, 70 Ohio St.3d 158, 637 N.E.2d 903 (1994), at syllabus. Furthermore, a waiver may be limited or unlimited in duration. *State v. Bray*, 9th Dist. Lorain No. 03CA008241, 2004-Ohio-1067, ¶ 8.

{¶ 9} The trial court originally scheduled Mr. Jaeger's trial for January 10, 2017. Upon motions of Mr. Jaeger's counsel, the trial date was continued to February, then March, then May, then June, and, finally, to July 24, 2017. Mr. Jaeger acknowledges that his attorney moved for many of the continuances. He argues that the last one, however, should not be charged to him. According to the transcript of the June hearing, Mr. Jaeger had accepted a plea agreement. After arriving on the day of trial to change his plea, however, Mr. Jaeger informed the prosecution that he had changed his mind about their agreement.

41

The court inquired whether the trial could still go ahead later that day or the next, but the prosecutor answered that they did not have a jury and that its witnesses were not present. Mr. Jaeger's counsel then told the court that, since it was Mr. Jaeger who had changed his mind, he was moving for a continuance of the trial. Mr. Jaeger is bound by his counsel's request even if it was without his consent. *State v. McBreen*, 54 Ohio St.2d 315, 376 N.E.2d 593 (1978), syllabus.

{¶ 10} Mr. Jaeger argues that even if his trial was held within the time limits set out in R.C. 2945.71, the delay still violated his constitutional right to a speedy trial. As noted earlier, however, the Ohio Supreme Court has held that a defendant's constitutional right to a speedy trial is coextensive with his statutory rights, except in some limited circumstances not implicated here. *O'Brien* at 9, 516 N.E.2d 218, citing *State v. Ladd*, 56 Ohio St.2d 197, 201, 383 N.E.2d 579 (1978). Even if we were to conclude that an exception to the general rule applied here, we would then have to make a threshold determination concerning the length of the trial delay. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 89, 45 N.E.3d 127. Until a delay is presumptively prejudicial, which means that it "approaches one year in length[,]" there is no need to engage in a constitutional balancing test. *Id.* at ¶ 89 -90. The Grand Jury indicted Mr. Jaeger in October 2016. Mr. Jaeger's trial was nine months later, falling short of the "approach[ing] one year" requirement, even without omitting the continuances granted at Mr. Jaeger's request. *Id.* at ¶ 89. We, therefore, conclude that Mr. Jaeger's constitutional right to a speedy trial was not violated and that the trial court did not err when it denied his motion to dismiss. Mr. Jaeger's first assignment of error is overruled.

*State v. Jaeger*, 2018 WL 3624801, at **1-2.

The Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees a defendant a "speedy and public trial." U.S. Const. Amend. VI; *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). "The purpose of the speedy-trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished." *Brown v. Romanowski*, 845 F.3d 703, 712 (6th Cir. 2017). *See also Doggett v. United States*, 505 U.S. 647, 654, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); *Barker*, 407 U.S. at 532-33.

In *Barker,* the Supreme Court established a balancing test in which the conduct of both the State and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length

of delay between the date of indictment or arrest (whichever is earlier) and the date of trial. *Barker,* 407 U.S. at 530.  *See also United States v. Marion*, 404 U.S. 307, 320–21, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530.  *See also Doggett*, 505 U.S. at 651; *Brown*, 845 F.3d at 712.

To trigger a speedy trial analysis under the four-factor balancing test, the defendant first must first demonstrate that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett*, 505 U.S. at 651–52; *Barker*, 407 U.S. at 530.  "The length of the delay is a threshold requirement. If the length of the delay is not 'uncommonly long,' then judicial examination ends." *Maples v. Stegall*, 427 F.3d 1020, 1025–26 (6th Cir. 2005) (quoting *Doggett*, 505 U.S. at 652).  *See also Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir. 2001) (delay is considered the "triggering" factor).  Delays approaching one year are considered presumptively prejudicial, while delays of a lesser duration are not *per se* excessive.  *See Doggett*, 505 U.S. at 652, n. 1.  *See also Brown*, 845 F.3d at 713 (finding a five month delay is not "uncommonly long" and would not trigger analysis of the remaining *Barker* factors); *United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993) (six-and-one-half month delay not presumptively prejudicial); *United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000) (delay of five months not *per se* excessive).

The Court finds the state appellate court reasonably determined Jaeger's speedy trial claim lacked merit.  Here, Jaeger was arrested on October 12, 2016. He was brought to trial on July 24, 2017, which is a little over nine months after his arrest. The delay is well under a year and, therefore, not presumptively prejudicial.  *See Brown*, 845 F.3d at 713; *White*, 985 F.2d at 275; *Howard*, 218 F.3d at 564.

43

Nonetheless, assuming, *arguendo*, that the length of the delay could be considered prejudicial, the remaining *Barker* factors do not weigh in favor of Jaeger.  The second *Barker* factor is the reason for the delay.  In assessing this factor, "the court considers who is most at fault—the government or the defendant." *Brown*, 845 F.3d at 714.  *See also United States v. Schreane*, 331 F.3d 548, 554 (6th Cir. 2003).  "Governmental delays motivated by bad faith, harassment or attempts to seek a tactical advantage weigh heavily against the government." *Schreane*, 331 F.3d at 553. Negligence and unexplained delay also weigh against the government, albeit less heavily, "'but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'" *Id*. at 554 (quoting *Barker*, 407 U.S. at 531, 92 S.Ct. 2182).

Here, the state court record reflects Jaeger contributed to the delay by a number of motions to continue the trial date and a last-minute decision to not go forward with a plea agreement.  The second *Barker* factor, therefore, does not weigh in Jaeger's favor.

The third factor (*i.e.*, whether the defendant asserted his speedy trial rights) weighs in Jaeger's favor, as the record reflects he filed motions to dismiss his case on speedy trial grounds. (Doc. No. 93-1, Ex. 18, 20.)  However, the last *Barker* factor, prejudice, does not weigh in Jaeger's favor.  As the Sixth Circuit has explained, this factor "should be assessed 'in the light' of three interests: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern, and (3) to minimize damage to the defense." *Barker*, 407 U.S. at 532. *See also Brown*, 845 F.3d at 716.  Here, Jaeger makes no argument as to how he was prejudiced by any perceived delay in bringing him to trial.

Under these circumstances, the Court finds the state appellate court reasonably concluded Jaeger's constitutional speedy trial claim was meritless. It is therefore recommended Jaeger's second ground for relief be denied.

44

2.      **Ground Four**

In his fourth ground for relief, Jaeger argues there was insufficient evidence to support a guilty verdict.  (Doc. No. 78.)

Respondent argues that "Jaeger has failed to demonstrate with clear and convincing evidence that the state appellate court's rejection of his sufficiency-of-the-evidence claim was contrary to United States Supreme Court precedent or based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §2254(d) & (e)."  (Doc. No. 169 at 53.)

Jaeger raised a sufficiency of the evidence claim to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 93-1, Ex. 24, 28.)  The state appellate court considered this claim on the merits and rejected it as follows:

> {¶ 11} Mr. Jaeger next argues that there was insufficient evidence to convict him of the offenses. A challenge to the sufficiency of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* Although we conduct a de novo review when considering a sufficiency of the evidence challenge, the appellate court does not resolve evidentiary conflicts or assess the credibility of witnesses as those functions belong to the trier of fact. *State v. Tucker*, 9th Dist. Medina No. 14CA0047-M, 2015-Ohio-3810, ¶ 7.
>
> {¶ 12} Mr. Jaeger argues that the State failed to prove that he was involved in all of the offenses. Although he admits to being involved in attempting to break into a gas station before his arrest on October 12, 2016, he argues that there was no evidence connecting him to the other offenses.
>
> {¶ 13} The State presented video recordings of the incidents from the gas stations' surveillance systems. There were two men during each offense, wearing similar clothing each time. One of the men was acknowledged to be Mr. Jaeger's accomplice. The other man was taller and wore a blue sweatshirt

45

that had the letters "EXP" across the front of it. He also wore gray pants and pointed dress shoes during the offenses. After law enforcement stopped Mr. Jaeger and the accomplice on October 12, 2016, they found a blue sweatshirt with the letters EXP across the front of it on the seat behind where Mr. Jaeger had been sitting. The car also contained gloves, hats, and facial coverings similar to the ones used during the offenses. Mr. Jaeger was wearing gray pants and pointed dress shoes at the time of the stop.

{¶ 14} According to Mr. Jaeger, because the faces of the offenders were covered, it could have been different individuals wearing the blue sweatshirt and other clothes during each offense. Detective Paul Schismenos testified, however, that he had studied the movements and mannerisms of the person wearing the blue sweatshirt and they were consistent from one incident to the next. The person wearing the blue sweatshirt was also of a consistent height and body shape from incident to incident. He also testified that the two men worked together in the same way during each break-in.

{¶ 15} The evidence establishing that Mr. Jaeger was involved in all of the offenses is circumstantial, but circumstantial evidence has the same probative value as direct evidence. *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 at paragraph one of the syllabus. Upon review of the record, viewing the evidence in a light most favorable to the prosecution, we conclude that it was sufficient, if believed, to demonstrate beyond a reasonable doubt that Mr. Jaeger was one of the men committing each of the gas station break-ins.

{¶ 16} Mr. Jaeger also argues that the State failed to prove that he was involved in a criminal enterprise. The jury convicted Mr. Jaeger of engaging in a pattern of corrupt activity under R.C. 2923.32(A)(1). That section provides that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *." "A 'pattern' requires the commission of two or more of the predicate offenses (also referred to as 'incidents of corrupt activity') listed in R.C. 2923.31(I)." *State v. Willan*, 144 Ohio St.3d 94, 2015-Ohio-1475, ¶ 5, 41 N.E.3d 366, quoting R.C. 2923.31(E). The predicate-offense list includes breaking and entering under R.C. 2911.13. R.C. 2923.31(I)(2)(a). " 'Enterprise' includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C).

{¶ 17} Mr. Jaeger's argument focuses again on his assertion that he was only involved in one of the offenses. As previously noted, however, there is circumstantial evidence that Mr. Jaeger was one of the two men that committed each breaking and entering offense. Mr. Jaeger also told law enforcement that he could provide the names of all of the individuals involved in the sale of the

stolen cigarettes. Upon review of the record, we conclude that there was sufficient evidence that Mr. Jaeger was a member of an enterprise that engaged in a pattern of corrupt activities. Mr. Jaeger's third assignment of error is overruled.

*State v. Jaeger*, 2018 WL 3624801, at *3.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *Id. See also Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782, at *3 (6th Cir. 1993) (citing *Walker*, 703 F.3d at 969–70*.*) *See also Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v.*

> *Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*).
> And second, on habeas review, 'a federal court may not overturn a state court
> decision rejecting a sufficiency of the evidence challenge simply because the
> federal court disagrees with the state court. The federal court instead may do so
> only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting
> *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678
> (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012).  Under this standard,

"we cannot rely simply upon our own personal conceptions of what evidentiary showings would be

sufficient to convince us of the petitioner's guilt," nor can "[w]e ... inquire whether any rational trier of

fact would conclude that petitioner ... is guilty of the offenses with which he is charged."  *Brown v.*

*Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas court must confine its review to determining

whether the state court "was unreasonable in its conclusion that a rational trier of fact could find

[petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.* (emphasis in

original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

Upon careful review of the trial transcript, the Court finds the state appellate court reasonably

determined Jaeger's convictions were supported by sufficient evidence.  In resolving Jaeger's sufficiency

of the evidence claim, the state appellate court accurately summarized the evidence and correctly

identified the applicable law.  As the state appellate court noted, there were two men during each offense,

wearing similar clothing each time.  (Doc. No. 94-2 at 59-61.)  One of the men was taller and wore a blue

sweatshirt that had the letters "EXP" across the front of it.  (Doc. No. 94-2 at 60-63.)   He also wore gray

pants and pointed dress shoes during the offenses.  (*Id.*)  When police officers pulled over Jaeger and his

accomplice on October 12, 2016, they found a blue sweatshirt with the letters EXP across the front of it on

the seat behind where Jaeger had been sitting. (Doc. No. 94-2 at 9, 40-41.)  Police officers also found

gloves, hats, and facial coverings similar to the ones used during the offenses, along with two grey trash

cans and a large rock.  (Doc. No. 94-1 at 196-200; Doc. No. 94-2 at 7-11, 13-19, 40-41.)    Jaeger was wearing gray pants and pointed dress shoes at the time of the stop.  (Doc. No. 94-2 at 71-73.)

Detective Paul Schismenos testified that he had studied the movements and mannerisms of the person wearing the blue sweatshirt and they were consistent from one incident to the next.  (Doc. No. 94-2 at 79-80.)  The person wearing the blue sweatshirt was also of a consistent height and body shape from incident to incident.  (*Id.*)   He also testified that the two men worked together in the same way during each break-in.  (*Id.*)

After his arrest, Jaeger contacted police and offered to become a confidential informant and reveal details of the cigarette theft operation.  (*Id.* at 82-84.)  However, once officers informed him he would be charged with engaging in a pattern of corrupt activity, Jaeger insisted he was only involved in the failed robbery attempt on October 12, 2016.  (*Id.*)

It is not for this Court to weigh evidence or determine credibility.  *See Jackson*, 443 U.S. at 317-19; *Coleman*, 566 U.S. at 651.  While Jaeger interprets evidence in a light most favorable to him, that is not the standard – the Court must view the evidence in a light most favorable to the prosecution.  *Jackson*, 443 U.S. at 319.

Under the "doubly deferential" standard, the Court cannot say the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial."  *Brown v. Konteh*, 567 F.3d at 205.  Accordingly, it is recommended the Court find Ground Four lacks merit.

## VI. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.

Date:  September 1, 2023                         *s/ Jonathan Greenberg*
                                                 Jonathan D. Greenberg
                                                 United States Magistrate Judge


## OBJECTIONS

 Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).